## PACIFIC IMPROVEMENT CO. v. CHATTANOOGA SOUTHERN R. CO.

(Circuit Court, N. D. Georgia. May 2, 1910.)

### No. 18.

RAILROADS (§ 194*)—RIGHT OF WAY FOR SPUR TRACKS—LICENSE—RIGHTS OF PURCHASER.

> Where a commissioner under a judicial decree sold the property of a railroad company, expressly enumerating in the deed certain spur tracks, constructed on the land of an iron company under a verbal license and then in use by the railroad company, the iron company cannot assert an exclusive right to the use of such tracks for individual purposes as against the purchaser, which, without notice of such claim, has expended money in making extensive repairs and improvements thereon, and especially where such tracks are situated in Georgia, in view of Code Ga. 1895, § 3069, which provides that "a parol license * * * is not revocable when the licensee has executed it, and in so doing has incurred expense. In such case it becomes an easement running with the land."

> Ed. Note.—For other cases, see Railroads, Cent. Dig. § 649; Dec. Dig. § 194.*]

In Equity. Suit by the Pacific Improvement Company against the Chattanooga Southern Railroad Company. On exceptions to master's report on intervention of Kensington Iron & Coal Company. Exceptions overruled, and intervention dismissed.

W. S. McKenry, for Kensington Iron & Coal Co.

Pritchard & Sizer and R. M. W. Glenn, for Chattanooga Southern Railroad Co. and receivers.

PARDEE, Circuit Judge. In the order of reference the whole case upon the intervention of the Kensington Iron & Coal Company

was referred to a special master, who has reported on the facts as found by him, and also has given his conclusions of law based on the facts found. To this report the Kensington Iron Company filed exceptions. The exceptions all relate to and object to the conclusions of the master on the facts, and therefore I have read all the evidence with care, and given particular attention to the specific objections of the intervener. My conclusion is that none of the exceptions are well taken; all of the master's findings being fully supported by the preponderance of evidence in relation thereto.

Considering that the case shows that in February, 1905, the spur tracks, the use of which is in controversy, were all on the ground and in use and occupancy of the Chattanooga Southern Railway Company, and that on that day the commissioner, under judicial decree, after due notice and advertisement, sold all the property of the Chattanooga Southern Railway Company, main and spur tracks, etc., to Henry A. V. Post and others, purchasing committee, and by deed of that date conveyed all and singular of every description all the property of the Southern Railway Company, particularly therein describing and specifying "the spur tracks on the property of the Kensington Iron Company in Walker county, Georgia, being three different spurs, about 3½ miles in all, leading to the iron ore mines of the Kensington Iron Company, only the steel rails upon which belong to the Chattanooga Southern Railway Company, from the receiver thereof, except the spur track to what is known as 'Owl Hollow,' being about one-half a mile long, and the cross-ties and rails upon which belong to and are owned by the Chattanooga Southern Railway Company or its receiver;" that this sale conveyed no notice to the purchasers aforesaid that the spur tracks then in use by and for the Southern Railway Company were in any wise limited to special or exclusive use; that soon after the said purchasing committee conveyed the said property, all as above described, to the Chattanooga Southern Railroad Company, who entered into possession of the same; that up to the time of this intervention neither the Chattanooga Southern Railroad Company, nor its predecessor, nor its present receivers, received any notice of the claims of the Kensington Iron Company to an exclusive use of said tracks for individual purposes, all of which are based upon alleged oral understanding and agreement entered into with the Chattanooga Southern Railway Company and Joseph W. Burke, its receiver—I concur with the master in his conclusions of law, to wit:

"From the foregoing facts I find that the Chattanooga Southern Railroad Company have acquired an easement over the lands of the Kensington Iron & Coal Company to the extent that said railroad company and its receivers have the right to operate its engines and cars over the said Owl Hollow branch for the purpose of hauling freight for any parties who may desire to ship over the line of said railroad company; that the Chattanooga Southern Railroad Company has no title to the lands over which said Owl Hollow branch is laid through the lands of the Kensington Iron & Coal Company, but their rights thereover are as licensees; and in view of the fact that extensive improvements and expenditures have been made by said railroad company and its receivers in repairing, maintaining, and extending said track, the Kensington Iron & Coal Company would not have the right at this time to revoke the right of such user of said railroad company and its receivers.

"In support of this finding I call attention to the provisions of section 3069 of the Code of Georgia (1895), which is as follows: 'A parol license is primarily revocable at any time if its revocation does no harm to the person to whom it has been granted; but it is not revocable when the licensee has executed it, and in so doing has incurred expense. In such case it becomes an easement running with the land.' In the case of Hiers v. Mill Haven Company, 113 Ga. 1002, 39 S. E. 444, the court say: 'After a person has made improvements or invested capital, which must necessarily have preceded the enjoyment of the license granted to him, it becomes an agreement for a valuable consideration, and the licensee a purchaser for value. While such a license is executory, as a general rule it is revocable; but not after it is executed.'

"I therefore find that the injunction as prayed for by the intervener be denied, and that the order passed by his honor, William T. Newman, United States Judge, on January 28, 1908, be now set aside and revoked."

A decree will be entered overruling the exceptions to the master's report and confirming the said report, revoking order made at chambers of the Circuit and District Judges February 17, 1908, which stayed operations of receivers under the previous order of court of January 28, 1908, and dismissing the intervention of the Kensington Iron Company, with costs.