No. 12.—BRYAN SHEFFIELD and others, plaintiffs in error, vs. JESSE COLLIER, defendant in error.

[1] A. and B. were joint tenants of a lot of land. No partition had been made between them. It was understood, however, that A should have the east and B the west end of the tract. B agreed that A might erect a mill on his, A's half, and cut as much timber off the west half, and overflow as much of the land, as might be necessary for that purpose. Afterwards B sold to C, the latter having agreed expressly with A, to abide by these stipulations, which B exacted of him

Sheffield and others *vs.* Collier.

before he could consent to sell. After the dam was partly constructed, and timbers collected for the building the mill, C sold to D, who shortly thereafter notified A to discontinue the work; and upon his refusal brought his action of trespass, for the overflowing of his land by the back-water. *Held,* that under the circumstances the action could not be maintained, and that the original parol agreement could not be revoked, after it had been executed at the defendant's expense.

Trespass for overflowing plaintiff's land. Tried before Judge WARREN. In Early Superior Court. April Term, 1847.

For the facts of the case, and the questions made and decided below, see the opinion delivered by the Supreme Court.

TAYLOR, SCHLEY, and DE GRAFFENREID for the plaintiffs in error.

Mr. Taylor submitted the following brief of points and authorities:

Without the consent of the adjoining proprietors, one cannot divert the quantity of water below, nor throw back upon those above, without a grant or an uninterrupted possession of twenty years. *3 Kent Com.* 353; *2 John. Ch. R.* 162.

The right to overflow the lands of another, is an incorporeal hereditament, and must exist by grant or prescription. *Taylor* vs. *Hampton.* 4 *M'Cord R.* 98; 1 *Crabb Law of Real Prop.* 251, 254, 264, 300, 301.

Every proprietor of land through which a water course runs, is entitled to the use of it, provided his own use be not inconsistent with the use of another, either above or below. Nor can the proprietor below, throw back water upon him above, without his license or consent, *Omelvany* vs. *Jaggers,* 2 *Hill, S. C. R.* 634; *ib.* 387.

To throw back water upon another's land, is an easement, which can be created only by grant or prescription. 1 *Crabb,* 300; 2 *Black. Com.* 121; *Angell on Water Courses,* 57, 58; *Hewlins* vs. *Shippam,* 11 *Eng. Com.* 207; 3 *Kent,* 321, 322, 353; 4 *East.* 107; *Gilbert Evi.* 112.

The right to overflow the lands of another is such an interest in lands as must be created by writing, under the first section Statute of Frauds. *Thompson* vs. *Gregory.* 4 *John. R.* 81; upon the fourth ground.

TOWNS, REESE, & SULLIVAN & MOORE for the defendant in error.

*By the Court.*—Lumpkin, J. delivering the opinion.

This was an action of trespass tried before my brother Warren, at the last April Term, 1847, of the Superior Court of Early County.

Benjamin Collier, and his brother, Jesse Collier, the defendant, had been joint tenants of the land upon which the trespass was alleged to have been committed. In September, 1843, Benjamin Collier sold and conveyed by deed his interest in the premises to one William Tuten, at the same time informing the purchaser that he had agreed with his brother that he might erect a mill on the land, and requiring of Tuten to see his brother and get his consent to the sale. This was done—Tuten had an interview with Jesse Collier, who agreed that Benjamin might dispose of the *west* half of the lot of land, *upon condition* that he should be permitted to cut as much timber off of the said west-half as should be necessary to build the mill, and to overflow as much land by backwater, as should be required for the mill. Tuten expressed himself satisfied with these terms, and the contract was accordingly consummated. In January, 1844, Tuten sold to the plaintiff, Bryan Sheffield, and told him of the privileges extended to Jesse Collier, but represented to Sheffield, that they were to continue only while he, Tuten, owned the land. Sheffield inquired if this license was inserted in the deed, and, being answered in the negative, he said, that he cared nothing about it. *He requested Tuten to say nothing about this trade.* Collier had commenced constructing his dam and collecting the timber for the mill, when the last contract was made. It was proved that Sheffield must have known that Collier was erecting the mill, inasmuch as he owned a mill himself two or three miles below, upon the same stream, the road to which, from his residence, passed within one or two hundred yards of Collier's mill. Sheffield notified Collier, after he bought, not to overflow his land. There are some ten or fifteen acres of Sheffield's land covered by back-water, worth two or three dollars per acre. There is also a shoal or seat for machinery, very much injured by this back-water, and consequently the value of the entire tract is greatly lessened.

The Court charged the jury, that the parol license under which Jesse Collier acted, was sufficient to protect him from the

trespass, and on this direction they found a verdict for the defendant. Whereupon counsel for Sheffield excepted for misdirection.

This is a new question in our Courts, and I regret sincerely [1.] that, before writing out this opinion, I have not been able to procure Messrs. Gale and Whatley's very learned treatise on the Law of Easements, and *Brooke's Abridged Licenses*, where the doctrine involved is ably and fully discussed, as I infer from the late case of *Wood* vs. *Leadbitter*, 13 *Meeson & Welsby.*

The general rule, no doubt, as now settled is, that easements, like all other incorporeal hereditaments, must be by deed. And it is laid down in *Shepherd's Touchstone, p.* 231, and the same principle is supported by the reported cases, that a license, or liberty, cannot be created or annexed to an estate of inheritance, except under seal. 4 *M. & S.* 565.

The rule that a *parol* license is revocable, admits of exceptions upon different grounds ; and one is, where the license has been executed, in distinction from cases where it is executory only. In *Winter* vs. *Brockwell*, 8 *East. Rep.* 308, there was a parol license to put a sky-light over the defendant's area, (which impeded the light and air from coming to the plaintiff's dwelling, through a window,) and Lord Ellenborough, C. J., said, " that it was unreasonable that, after a party had been led to incur expense, in consequence of having obtained a license from another to do an act, and that the license had been acted upon, that the other should be permitted to recal his license and treat the first as a trespasser for having done that very act." That the point was new to him when it occurred at the trial, but that he had since looked into the books and found himself justified in taking the distinction between a license which is *executed* and which is not countermandable, and one which is only *executory.*

In *Liggins* vs. *Inge and another,* 7 *Bingham,.* 682, plaintiff's father, by oral license, permitted defendants to lower the bank of a river and make a weir above plaintiff's mill, whereby less water than before flowed to plaintiff's mill : *held,* that plaintiff could not sue defendants for continuing the weir, on the ground that it had been *executed.* And Tindal, C. J., in delivering the opinion of the court, says—" Suppose A authorises B, by express license, to build a house on B's own land, close adjoining to some of the windows of A's house, so as to intercept part of the light; could he afterwards compel B to pull the house down again, simply by giving notice that he countermanded the license ? Still further,

this is not a license to do acts which consist in repetition, as to walk in a park, to use a carriage-way, to fish in the waters of another, or the like; which license, if countermanded, the party is but in the same situation he was before it was granted. But this is a license to construct a work which is attended with expense to the party using the license; so that, after the same is countermanded, the party to whom it was granted may sustain a heavy loss. It is a license to do something which in its own nature seems intended to be permanent and continuing. And it was the fault of the party himself, if he meant to reserve the power of revoking such a license after it was carried into effect, that he did not expressly reserve that right, when he granted the license, or limit it as to duration. Indeed the person who authorizes the weir to be erected, becomes in some sense a party to the actual erection of it, and cannot afterwards complain of the result of an act which he himself contributed to effect."

There are four other English cases usually cited in support of the principle that parol licenses, under circumstances like the present, are irrevocable, viz : *Webb* vs. *Paternoster*, reported in five different books, namely, *Palmer* 71 ; *Roll.* 143, 152; *Noy*, 98; *Popham*, 157 ; *Godbolt*, 282 : *Wood* vs. *Lake, Sayer*, 3 ; *Taylor* vs. *Waters*, 7 *Taunt.* 374 ; *Wood* vs. *Manly*, 11 *Adol. & Ellis*, 34 ; *Perry & Davison,* 5. But, as some of these have been overruled or doubted, and the points they decide are not exactly in accordance with the case before us, I shall content myself merely with this reference to them. I am not aware that the law of the two authorities to which I have referred, and on which our judgment very much rests, has ever been questioned.

In the late and leading case of *Wood* vs. *Leadbitter*, 13 *Mees. & Wels.* 838, where the whole subject is most learnedly and fully discussed, and where the court goes very far in opposition to these parol licenses, *Winter* vs. *Brockwell* and *Liggins* vs. *Inge*, are not denied to be law. Baron Alderson forbears to advert to them, " or other cases ranging themselves in the same category, as they were decided on grounds inapplicable to the case then before him, and were in fact admitted not to bear upon it." And the first of these cases, to wit, *Winter* vs. *Brockwell*, is adverted to with apparent approval by Parke, Baron, in the opinion which he delivered in *Wallis* vs. *Harrison and others*, 4 *Mees. & Wels.* 538. He remarks—" We are not called upon in this case, to consider whether a license to create or make a rail-road, granted by a former owner

of the soil, is countermandable after expense has been incurred by the license, which was the question in *Winter* vs. *Brockwell ;* for it is not alleged that there has been any expense incurred in consequence of this license, and *therefore it remains executory.*"

Now if these two decisions contain the true distinction, (and their authority has never been impeached,) then the present action was clearly not maintainable ; for the facts are much stronger for Collier than either of these defendants. In the main, however, the circumstances are very similar.

The same doctrine is asserted in the American cases, namely, that where acts have been done by one party, upon the faith of a license given by another, the latter will be estopped from revoking it to the injury of the former, and this even if the exercise of the right given by the license, is of a nature to amount to the enjoyment of an easement or other incorporeal hereditament.

In *Le Fevre* vs. *Le Fevre and others,* 4 *Serg. & Rawl,* 241, the Supreme Court of Pennsylvania admitted parol evidence to prove that, after the execution of a deed conveying a right to a water-course through the granted land by courses and distances, a verbal agreement was entered into between the parties, for their mutual accommodation, altering the route of the water-course, *upon the ground that the agreement had been carried into effect,* Judge Duncan said, that it was such an *executed* contract, as that on that ground chancery would restrain the defendant from disturbing the right : and he refers to a case, in 2 *Eq. Abr.* 522, to establish what he considers a very plain principle of equity and justice. A diverted a water-course, which put B to great expense in laying of soughs, &c., and the diversion being a nuisance to B, he brought his action, and an injunction was decreed against him from proceeding, on a bill filed for that purpose ; it being in testimony that B saw the work when it was carrying on, and connived at it, without showing the least disagreement, but rather the contrary.

Judge Duncan also cited the case of *Short* vs. *Taylor,* in Lord Somers' time, which was thus : Short built a fine house ; Taylor began to build another, but laid part of his foundation on Short's land ; Short seeing this, did not forbid him, but, on the contrary, very much encouraged it, and, when the house was built, he brought an action, and Lord Somers granted an injunction, and said, it was but just and reasonable ; for, being a nuisance, every continuance is a fresh nuisance, and so he would be perpetually

liable to actions, which would be hard when he was encouraged by the party himself.

The Judge concludes with this observation : " *A parol license may be revoked, but if it has been acted upon, and the party put to expense, it cannot be recalled and the party made a wrong-doer.*"

The case of *Rerick* vs. *Kern*, 14 *Serg. & Rawl*, 267 ; was this ; some years before the institution of the suit, Henry Kern, the plaintiff below, being about to erect a saw mill on a stream, which was designated by the witnesses as the right hand stream, a better seat for the mill was found by his mill-wright on what was termed the left hand stream. Kern thereupon applied to Rerick for permission to turn the water into the left hand stream, which was granted. In consequence of this permission, he built the saw mill on the left hand stream. Without the aid of the right hand stream the water of the left hand stream would have been wholly insufficient, but the right hand stream alone, would have served the purposes of the mill, three or four months during the year. By a union of the two streams the mill was rendered about a third more valuable than it would have been with the right hand stream alone. No deed was executed, nor was any consideration given, but Kern in consequence of the permission given by Rerick, built a very good mill, which did a great deal of business, and which he would not have built on the left hand stream if the permission had not been given. Rerick diverted the water course, in consequence of which Kern lost the benefit of his mill ; whereupon he brought a special action on the case, for damages ; and the court *held*, if a parol license be given *without consideration*, to use the water of a stream for a saw mill, in consequence of which the grantee goes to the expense of erecting a mill, the license cannot be revoked at the pleasure of the grantor ; and if he divert the water *to the* injury of the grantee, the latter may maintain an action against him.

Gibson, Justice, says " The defence in this case is put on the ground that a mere license is revocable, under all circumstances and at any time. But a license may become an agreement upon valuable consideration ; as where the enjoyment of it must necessarily be preceded by the expenditure of money ; and when the grantee has made improvements or invested capital in consequence of it, he has become a purchaser for a valuable consideration. Such a grant is a direct encouragement to expend money, and it would be against all conscience to annul it, as soon as the

benefit expected from the expenditure is beginning to be perceived."

The court take still higher ground and maintain that, in all such cases, equity would decree a specific performance of the agreement. It is asked " why should not this be done ? That a party should be let off from his contract on payment of a compensation in damages, is consistent with no system of morals but the common law, which was in this respect originally determined by political considerations, the policy of its military tenures requiring that the services to be rendered by the tenant to his feudal superior, should not be prevented by want of personal independence. Hence the judgment of a court of law operates on the right of a party, and the decree of a court of equity on the person. But the reason of this distinction has long ceased, and equity will execute every agreement for the breach of which damages may be recovered, where an action for damages would be an inadequate remedy. How very inadequate it would be in a case like this, is perceived, by considering that a license which has been followed by the expenditure of ten thousand dollars, as a necessary qualification to the enjoyment of it, may be revoked by an obstinate man who is not worth as many cents."

It is usually conceded that the license may be revoked, if that which has been erected under it has been destroyed. But the court in this case held " that the license would survive the erection itself, if it should be destroyed or fall into a state of dilapidation ; that having had in view an unlimited enjoyment of the privilege, the grantee has purchased by the expenditure of money a right indefinite in point of duration, which cannot be forfeited by non-user, unless for a period sufficient to raise the presumption of a release. The right to rebuild in case of destruction or dilapidation, and to continue the business on its original footing, may have been in view as necessary to his safety, and may have been an inducement to the particular investment in the first instance. The cost of rebuilding a furnace for instance, would be trivial when weighed with the loss that would be caused by breaking up the business and turning the capital into other channels ; and therefore a license to use water for a furnace would endure for ever. But it is otherwise where the object to be accomplished is temporary. Such usually is the object to be accomplished by a saw mill—the permanency of which is depen-

dant on a variety of circumstances, such as an abundance of timber, on the failure of which the business is necessarily at an end; but till then it constitutes a right, for the violation of which redress may be had by action. *With this qualification it may safely be affirmed, that expending money or labour in consequence of a license to divert a water course or use a water power in a particular way, has the effect of turning such license into an agreement that will be executed in equity.*"

The doctrine here laid down is fully sustained by *Ricker* vs. *Kelly,* 1 *Greenleaf R.* 117; *Ameriscoggin Bridge* vs. *Bragg,* 11 *New Hampshire R.* 102; *Dorrance* vs. *Simons,* 2 *Root R.* 208; and numerous other State authorities, which to avoid the imputation of pedantry, I shall forbear citing.

We are then unable to discover any error in the opinion of the Court, upon the points that were submitted to the jury, and have come to the conclusion, that the direction given upon the law was correct, and that if Sheffield sustained an injury, still no action can be maintained for the damage.

    Judgment affirmed.