## HIERS v. MILL HAVEN COMPANY.

After a person has made improvements or invested capital which must have nec- essarily preceded the enjoyment of a license granted to him, it becomes an agreement for a valuable consideration and the licensee a purchaser for value. While such a license is executory, as a general rule it is revocable, but not after it is executed. Especially are the principles above stated applicable in a case where the license was originally granted in writing and upon a valu- able consideration moving to the licensor.

Argued June 8, — Decided July 20, 1901.

Petition for injunction. Before Judge Evans. Screven superior court. May 6, 1901.

The plaintiff is conducting a sawmill and timber business on the Savannah river in Screven county, and in connection therewith he operates a tramroad, propelling his cars by horse-power. The de- fendant corporation, having set up another such business on the same river and not far from that of the plaintiff, and having ob- tained a grant of way for a tramroad, to be operated by steam- power, from the same person who originally granted the way over which the plaintiff's road runs, and being about to construct a tram- road across that of the plaintiff, he brought a petition for injunc- tion to prevent such construction, on the grounds that he would be irreparably damaged thereby, and that the defendant has no right to lay its road across his. Issue was taken by answer, and at the hearing the evidence on the question of damages, and as to whether it is necessary for defendant's tramroad to cross that of the plain- tiff, was directly conflicting. The injunction was denied on con- ditions, and the plaintiff excepted on the ground that it should have been granted. By cross-bill the defendant excepted on the ground that the injunction should have been denied unconditionally. J. T. Wade was the owner of the land over which the rights of way were granted. On April 28, 1898, he and J. M. Deaton entered into a written agreement whereby Wade "agrees to give to said party of the second part the right to lay down a tramroad from any point to Savannah river, with the privilege to use any timber cut down on right of way in constructing said road, provided that said right of way shall not exceed ten feet in width, and said tram- road shall be laid down on a certain course agreed upon by said J. T. Wade, and no ditch shall be filled in crossing same, or plan- tation roads blocked, and the construction at the river landing shall

be so situated as to give unobstructed use of said landing to all parties who do not care to patronize said road. And the party of the first part further agrees to give to the party of the second part the right to use the tramroad for any and all purposes for a period of nine years from date, at the end of which time said road and warehouse or houses shall revert to the said J. T. Wade. For and in consideration of the above agreement the party of the second part agrees to furnish to the said party of the first part, his heirs and assigns, for individual use and benefit, wharfage and transportation of all merchandise and all farm products on said tramroad when in operation, as well as warehouse privileges, free of charge whatever," etc. On November 15, 1899, Deaton conveyed to the plaintiff the "privileges and advantages" which he held under the agreement with Wade. The defendant holds a conveyance from Wade, dated March 15, 1901. In some of the affidavits introduced by the defendant it was stated that the crossing can be made with old-style crossing, which would not materially affect the plaintiff or his tram or increase the risk thereon; but that said crossing can be made also with automatic hinge crossing as used by some of the railroads in Georgia, an arrangement by which the second road crossing the first drops across the stringers or rails of the first road the hinge end of crossing, which is hung with weights, goes back and lifts itself off the road when not in use, and in this way does not affect the stringers or rails of the first road; that this hinge crossing can be arranged either to rest on stringers or rails of first road or to be elevated above them and not to touch them at all, and neither arrangement would cut or injure in any way the stringers or rails of the first road; and that such automatic crossing amounts to a temporary bridge across the first road, lifting itself from over the track when not in use. One of the conditions imposed by the order of the judge denying the injunction was, that the crossing be made by an automatic hinge crossing on grade level, arranged to be elevated above the stringers or rails of the tramroad, and not resting on or touching them. The other condition was, that the defendant give a bond for $3,000, conditioned to pay to the plaintiff such damages as may result from injuries caused by said automatic hinge crossing.

*White & Boykin* and *Charlton & Charlton*, for plaintiff.

*E. K. Overstreet*, for defendant.

Cobb, J.   Without regard to the question as to whether the instrument under which Hiers claims created an estate for years, an easement, or a license in Deaton and his assignees, the tramroad which has been constructed upon the land of Wade is, for the term specified in the contract, the property of Hiers, and he is entitled to the free enjoyment thereof without molestation or hindrance from Wade or any one claiming under him.   The conclusion just stated can be properly reached even though the rights of Hiers upon the land of Wade be those of a licensee only.   In *Cook* v. *Pridgen*, 45 *Ga.* 339, 340, Judge McCay, after stating that a license even in writing is revocable, says: "But it does not always follow that a license is revocable at the will of the party giving the license.   Even a temporary license must be considered as intended to continue until the objects of the parties are attained, as where even in courts of law it has been held that a *mere license* to overflow land with water, by a dam for a sawmill, can not be revoked during the continuance of the dam; since it may fairly be presumed that the parties intended the license to last that long at least."   In *Sheffield* v. *Collier*, 3 *Ga.* 87, Judge Lumpkin says: "Where acts have been done by one party upon the faith of a license given by another, the latter will be estopped from revoking it to the injury of the former, and this even if the exercise of the right given by the license is of a nature to amount to the enjoyment of an easement or other incorporeal hereditament."   In *Mayor of Macon* v. *Franklin*, 12 *Ga.* 243, Judge Nisbet says that even a parol license is not revocable in every case; and that "If the enjoyment of it must be preceded necessarily by the expenditure of money, and the grantee has made improvements or invested capital in consequence of it, it becomes an agreement for a valuable consideration, and he a purchaser for value.   In such cases, the books say that it would be against all conscience to permit the grantor to recall the license as soon as the benefit expected from the expenditure is beginning to be derived.   Whilst executory, as a general rule it is revocable, but not after it is executed."   See also *Rawson* v. *Bell*, 46 *Ga.* 19 ; *City Council* v. *Burum*, 93 *Ga.* 74, and cases cited.   If the right to revoke a license is taken away by the fact that the licensee has acted on it and expended money and made improvements upon the faith of the license, much more would the right to revoke be taken away where the license was originally granted upon a valuable consideration moving from the licensee to the licensor.

In the present case, under the contract creating the license, if it be treated merely as a license, the licensor is given what may properly be considered as very valuable rights during the continuance of the license, such as free wharfage and transportation of merchandise and farm products over the tramroad, as well as warehouse privileges, and at the expiration of the license the tramroad and warehouse or houses become the property of the licensor. In such a case the licensor is not only not permitted to do that which would be a complete revocation of the license, but he is also prohibited from doing anything which would materially interfere with the licensee in the enjoyment of the license, that is, anything which would amount to a partial revocation of the license. Hiers, as the assignee of Deaton under the contract between him and Wade, is entitled to the free and unrestricted use of the tramroad constructed in accordance with the contract, and anything which interferes with this free and unrestricted use can not be imposed upon him without his consent by Wade or any one claiming under him. It needs no argument to demonstrate that the crossing of Hiers' tramway by another tramway at any point is an obstruction of his right to the free use and enjoyment of his tramway and an invasion of his property interest in the tramway, notwithstanding he may have no interest in the land upon which it is situated. There may be a difference of opinion as to how much he may be damaged by such a crossing, but there can be no two opinions about the fact that damage results to the owner of the tramway by having another constructed across it. Wade should in the contract have reserved the right to permit others to cross the tramway which Deaton was authorized to construct, if he desired to grant such a privilege to others. Hiers was the owner of the tramway and had a right to the possession and use of it during the time fixed in the contract under which he claimed, and the attempt of Wade to confer the right upon some one else to cross this tramway was futile, and the court should have enjoined the construction of the crossing which was attempted to be made by the Mill Haven Company. As the judge erred in refusing to enjoin the construction of the crossing, the assignments of error in both the main and cross bill of exceptions were well taken.

*Judgment on each bill reversed. All the Justices concurring.*