## CHEROKEE MILLS *et al. v.* STANDARD COTTON MILLS.

1. A parol license is primarily revocable at any time, if its revocation does not harm the person to whom it has been granted; but is not revocable when the licensee has executed it and in so doing has incurred expense. In such case it becomes an easement running with the land.

2. Where the allegations of the petition to recover damages on the ground of interference with an easement set out a case under the rule stated in the preceding headnote, additional allegations to the effect that both the licensor and licensee were mill companies, that it was also agreed that, when the mill of the licensee, should be erected, the licensor would furnish power to the licensee upon the latter paying therefor, and also that the erection of the mill of the licensee furnished an additional customer for the licensor, and that the former purchased a large quantity of yarns from the latter, did not render the petition demurrable as a whole, although these added allegations may not have stated agreements which could be enforced as executory contracts.

3. An easement to use a spur-track extending from the land of a manufacturing company to the main line of a railroad, and passing through the property of another manufacturing company, and beneficial and useful as a means of ingress and egress to the premises of the former company in transporting to its mill machinery and raw materials, and shipping out its finished products, relatively to the second company, which granted the easement, will be treated as an easement appurtenant to the land, there being nothing to show that it was intended as a mere personal privilege.

4. There was nothing in the petition to show any intention on the part of the company to which the easement was granted, or its successors in title, to abandon it.

5. The allegations of the petition to the effect that the railroad company could not remove the spur-track without the consent of the company granting the license which ripened into an easement, and did not do so of its own accord, but that such company by written request caused the railroad company to remove the track so as to disconnect it from the land of the licensee, were sufficient, as against a general demurrer, to show that the licensor had such an interest or right as to authorize it to grant the license, and that it had destroyed the use of the easement.

NOVEMBER 18, 1912.

Action for damages. Before Judge Edwards. Polk superior court. September 9, 1911.

The Cherokee Mills, a corporation, and certain individuals brought suit against the Standard Cotton Mills. The petition, as amended, alleged, among other things, as follows: The Cherokee Mills owned a tract of land. Lying north of this land and between it and the main line of a railroad was the property of the Standard Cotton Mills, consisting of a tract of about ten acres. At the time the buildings of the Cherokee Mills were erected there was a spur-track or side-track running from the main line of the railroad through the premises of the Standard Cotton Mills and on to those of the Cherokee Mills. When this spur-track was constructed and extended on to the property of the Cherokee Mills, the officers of the Standard Cotton Mills, representing it, and certain named persons representing the Cherokee Mills entered into an agreement, that, if the Cherokee Mills would erect a plant for the purpose of making yarns into finished product, the spur-track should extend through the property of the Standard Cotton Mills and on to that of the Cherokee Mills, and remain there permanently. "It was further agreed that when said mill was erected, the Standard Mills would furnish power to the Cherokee Mills upon the said mills paying therefor. The erection of the said Cherokee Mills furnished an additional customer for the Standard Mills, and the Cherokee Mills purchased a large quantity of yarns from the said Standard Mills." The Cherokee Mills spent large sums of money in the erection and equipping of its buildings on the faith of the agreement that the company could have the spur-track to use for the purpose of bringing in raw material and shipping out the finished product of the mill. The spur-track was exceedingly useful to the mill, as car-loads of cotton, yarns, and other supplies could be placed within a few feet of the buildings and be unloaded directly

into them, and the finished products could be loaded directly into the cars from the platforms adjacent to the buildings. Owing to the condition of the streets and the railroads west of the company's property, and the topography of the land immediately east thereof, it is impossible to reach such property with a spur-track without very great expense and inconvenience. The individual plaintiffs purchased the assets of the Cherokee Mills before the Standard Cot, ton Mills caused the side-track to be removed, and had the title made to them individually, and the title to the assets of the mill, including the building and site and all rights and easements, vested in them. They afterward acquired the capital stock of the mill and expected to reorganize it. The spur-track could not have been removed by the railway company without the consent of the Standard Mills. The Standard Mills made written application to the railroad company, signed by its president, requesting the removal of the track, and caused it to be removed and placed at another point on the property of the first-named company. It was not removed at the instance of the railroad company, but solely and exclusively at the instance of the Standard Cotton Mills, and the railroad company removed the track believing that the Standard Cotton Mills owned the plant and property of the Cherokee Mills. The entire track was not removed, but enough of it to disconnect it from the property of plaintiffs, and they have no way by which to reach the main line of the railroad, as they have no land adjacent to it and no right to condemn land for that purpose. The track was removed or caused to be removed by the Standard Cotton Mills for the purpose of building a humidifier at that point. It would cost about $10,000 to put in a spur-track to the plaintiffs' mill, and it would be impossible to put in another spur-track as convenient and as valuable as the one taken out, unless it should be reconstructed at its former location. There are no streets or roads leading to the property of plaintiffs, and the spur-track was the only way which the plaintiffs had by which to reach their plant with raw material, machinery, and equipment, or to remove therefrom their finished product. The track and the perpetual right to use it were worth to the plaintiffs $10,000, and its removal almost destroyed the value of the mill. Prior to the removal the real estate of the plaintiffs was worth $15,000. Its

value has been decreased on account of such removal to the extent of $10,000. Damages were prayed.

The defendants demurred to the petition. The demurrer was sustained and the case dismissed. The plaintiffs excepted.

. *John K. Davis, W. H. Trawick,* and *Little & Powell,* for plaintiff. *Bunn & Bunn,* for defendant.

LUMPKIN, J. 1. Without entering into a discussion of authorities in other jurisdictions on the subject of parol licenses and easements, section 3645 of the Code of this State declares the following rule: "A parol license is primarily revocable at any time, if its revocation does no harm to the person to whom it has been granted; but is not revocable when the licensee has executed it and in so doing has incurred expense. In such case it becomes an easement running with the land." See also *Sheffield* v. *Collier,* 3 *Ga.* 82; *Mayor &c. of Macon* v. *Franklin,* 12 *Ga.* 239; *Winham, King & Aldridge* v. *McGuire,* 51 *Ga.* 578; *Baker* v. *McGuire,* 53 *Ga.* 245; *Ainslee* v. *Eason & Waters,* 107 *Ga.* 747, 749 (33 S. E. 711); *Hiers* v. *Mill Haven Company,* 113 *Ga.* 1002 (39 S. E. 444); *Brantley* v. *Perry,* 120 *Ga.* 760 (48 S. E. 332).

In the case before us it was alleged, that there was a spur-track from the main line of a railroad across the land of the Standard Cotton Mills and upon the land of the Cherokee Mills; that when the track was extended upon the grounds of the Cherokee Mills, the officers of the Standard Cotton Mills, representing it, agreed with the officers of the Cherokee Mills, representing it, that if the latter company would erect a plant for the purpose of making yarns into finished products, the spur-track should extend through the property of the former company on to that of the latter and remain there permanently; that the Cherokee Mills erected and equipped its mill at a large expense, on the faith of the understanding and agreement that it could have the spur-track to use for bringing in raw material and supplies and shipping out its finished products; that the track was useful and necessary for that purpose; and that, owing to the situation of the mill and the topography of the surrounding country, it had no other method of ingress and egress, unless at great expense. It was alleged that the railroad company could not have removed the spur-track without the consent of the Standard Mills. Thus the allegation was, in effect, that the Standard Cotton Mills had a permanent right to have the track remain

there, and that it granted a license to the Cherokee Mills, and on the faith of it the latter expended large sums. Under the authorities cited above, this was sufficient to give to the Cherokee Mills an easement in the track and its use as against the Standard Cotton Mills.

2. It was also alleged that it was further agreed, that, when the mill of the Cherokee Mills should be erected, the Standard Mills would furnish power to the Cherokee Mills upon the latter paying•therefor; and also that the erection of the Cherokee Mills furnished an additional customer for the Standard Mills, and that the former purchased a large quantity of yarns from the latter. But neither of the facts last mentioned was alleged as a condition of the acquirement of a license or easement. They seem to have been added to the agreement on which the easement was claimed, as matter of inducement, showing the advantage to the Standard Mills of having the Cherokee Mills built, and that the former expected to acquire a good customer by reason of the erection of the new mill. Counsel for the defendant in error urged that these agreements were vague, unilateral, and unenforceable. The present case, however, did not involve an effort to enforce an executory contract, but to claim an easement by reason of the grant of a license accompanied by the expenditure of large sums in connection with its- use. The decisions in *Morrow* v. *Southern Express Co.*, 101 *Ga.* 810 (28 S. E. 998), and other like cases have no application to that under consideration. Nor is the decision in *Swan Oil Co.* v. *Linder,* 123 *Ga.* 550 (51 S. E. 622), controlling in the present case. In that case there was an effort to obtain a decree of specific performance of an executory contract, compelling a person, who was alleged to be operating a railroad as a lessee, to execute to the plaintiff a lease of a right of way to build a spur-track connecting with the railroad, with a prayer that, if the plaintiff could not obtain such a decree, it should recover damages. The spur-track was never built, but it was alleged that the defendant had promised one of the promoters of the plaintiff company, that, as soon as the latter company should be incorporated, the defendant would deed to it the right of way. Without referring in detail to the reasoning in the opinion filed in that case, it will readily be perceived that it differs widely in its facts from the one before us. Here it was alleged that it was agreed that a spur-track should be

laid and remain permanently, if the Cherokee Mills would erect a mill; that the agreement was executed, the track being laid and the mill being erected at large expense.

3. If, under the allegations of the petition, the Cherokee Mills obtained an easement, should it be treated as an easement appurtenant to the mill property, or as an easement in gross, that is a mere right or privilege in the Cherokee Mills, not appurtenant to the land or passing with it? In *Taylor* v. *Dyches,* 69 *Ga.* 455, it was said that "Private ways are never presumed to be personal when they can be construed to be appurtenant to the land." Considering the nature of this easement, its utility for the advantageous operation of the mill, and the shipment of its products, it seems clear that the purpose of the parties was not merely to create a privilege personal to the corporation, but an easement beneficial and appurtenant to the mill property.

4. There was nothing to show any intention to abandon the easement. The suit was brought both by the Cherokee Mills and certain individuals. By amendment it was alleged that the individuals purchased the assets of the Cherokee Mills before the track was removed, and owned the mill and its site and all the easements connected therewith.

5. It was urged that it appeared that the railroad company took up the spur-track from the Cherokee Mills property, and that it did not appear that they had no right to do so. This contention is not well founded. It was alleged that the defendant company owned the land between the main line of the railroad and the property of the Cherokee Mills; and that the spur-track was actually laid down, and could not be removed without the consent of the defendant. It was also alleged that the railroad company did not remove the track of its own accord, but at the written request of the defendant company. Thus, according to the allegations of the petition, the defendant granted an easement and then caused the railroad company to destroy it, in connection with its own purpose to erect a building, and thus caused damage to the plaintiffs' property. *Stovall* v. *Coggins Granite Co.,* 116 *Ga.* 376 (42 S. E. 723).

The order in the record sustaining the demurrer appears to be sufficiently broad in its terms to cover both the general and special demurrers. But it was recited in the bill of exceptions that the

order sustained the general demurrer, and counsel for both parties stated in their briefs that only the general demurrer was passed upon, and neither of them referred to or argued the grounds of the special demurrer. We will therefore deal with the case on that basis, and determine only the questions thus urged. Nor was there any question of misjoinder of parties argued. As against a general demurrer, the petition set out a cause of action, and it was error to sustain such demurrer and dismiss the case.

*Judgment reversed. All the Justices concur.*