MILLER *v.* SLATER.

No. 11284.   JUNE 12, 1936.

*George H. Richter,* for plaintiff.

*Rogers & Terry* and *Gazan, Walsh & Bernstein,* for defendant.

BELL, Justice.   Clifford A. Miller filed a suit in equity against Pauline A. Slater.   The court sustained a general demurrer and dismissed the action, and the plaintiff excepted.   The petition was in two counts.   The first count alleged the following:

"2.   On and long prior to June 8th, 1925, James C. Slater owned front lot 69 in ward three on Tybee Isand, in said county.

"3.   The value of said lot was that it fronted the beach and the ocean, and had free access thereto.

"4.   On said June 8, 1925, she [the plaintiff] purchased for the sum of $2000 from said James C. Slater the western portion of said lot, having a width of seventy feet and a depth of one hundred and fifty feet, and received a deed therefor, in which the same was bounded north by the northern ten feet of said lot, on the east by the remaining portion of said lot, and west by Main Street (Butler Avenue).   Attached to said deed and made a part thereof was a plat of the property conveyed, and on said northern ten feet appeared the words "Cement Driveway."   The said deed also conveyed all and singular the easements, hereditaments, rights, privileges, members and appurtenances to the same belonging or in any wise appertaining.

"5.   While said J. C. Slater was the owner of said lot, and before the purchase by petitioner, he laid a concrete driveway on said northern ten feet of said lot extending from the western boundary of said lot to and beyond the portion thereof bought by petitioner, and there was no mark of separation between the portion of said lot bought by her and said way.

"6. At or about the point opposite the improvements on the eastern part of said lot said way became more narrow, and continued as a wooden way to the eastern boundary of said lot, affording easy access to beach and ocean.

"7. With the knowledge of said James C. Slater, petitioner proceeded to erect improvements on her portion of said lot, and relying upon the right to use said way she built her garage into said improvements so near to said way that it is impossible for her to drive a car in or out of said garage without using said way.

"8. The price paid by petitioner for the portion of the lot purchased by her was grossly excessive and unreasonable, without the use of said way from the western to the eastern boundary of said lot.

"9. The use of said way was the chief inducement to petitioner in the purchase of said lot.

"10. The use of said way was and is necessary to the reasonable enjoyment of her lot.

"11. Said way was created and intended for the common use of the owners of portions of said lot.

"12. Said way and the right of passage over the same constitute an easement appurtenant to the lot purchased by her.

"13. She has had the continuous, adverse, free and unobstructed use of the same from the time of her purchase until on or about May 20, 1935.

"14. Defendant is the owner of the eastern portion of said lot, and the successor in title of the said J. C. Slater.

"15. On or about May 20, 1935, on the eve of the rental season for property on Tybee, the defendant built along the line of said concrete way from the western boundary of petitioner's lot to the eastern boundary thereof a stout wire fence about five feet in height, strung on substantial posts, and said fence completely excludes petitioner from the use of said way in ingress and egress to and from her lot and access to the beach and ocean.

"16. The said fence and the consequent exclusion from said way destroys the desirability and availability of said property for occupation by petitioner, or for rental.

"17. She has heretofore rented said property for the sum of $450 for the summer season, and it has been impossible for her to rent the same for 1935, solely because of said fence, and defendant has damaged her in said sum.

"18. The said fence and the exclusion from said way has greatly depreciated the value of said lot and improvements thereon, and destroyed their use for the purpose for which they were bought by petitioner.

"19. The said fence is a continuing trespass and nuisance."

The prayers were for process, injunction, damages, a decree declaring that the driveway constitutes an easement, and for general relief. The second count was the same as the first through paragraph 6. The remainder of the second count was as follows:

"7. The price paid by petitioner for the portion of the lot purchased by her was grossly excessive and unreasonable, without the use of said way from the western to the eastern boundary of said lot.

"8. The use of said way was the chief inducement to the petitioner in the purchase of said lot.

"9. Shortly after her purchase aforesaid, and after she had expended about $80 in the beginning of the erection of improvements thereon, the defendant, then the wife, now the widow, of the said J. C. Slater objected so strenuously to the latter having sold it that petitioner, who did not wish to be obnoxious to the neighbor on the remainder of said lot, approached the said J. C. Slater with reference to said objections. He assured petitioner that she should always have the use of said way, but said he would rescind the purchase if petitioner wished, by paying the amount she had paid, but not for money expended by her aforesaid.

"10. Acting upon said assurance petitioner erected improvements on said lot purchased by her at a cost of about $3000, and relying upon said assurance, and with the knowledge of the said J. C. Slater, she built her garage into said improvements so near to said way that it is impossible for her to drive a car in or out of said garage without using said way.

"11. Said way and the right of passage over the same became and remained an easement appurtenant to the lot purchased by her.

"12. She has had the continuous, adverse, free, and unobstructed use of the same from the time of her purchase until on or about May 20, 1935.

"13. Defendant is the owner of the eastern portion of said lot, and the successor in title of the said J. C. Slater.

"14. On or about May 20, 1935, on the eve of the rental season

for property at Tybee, the defendant built along the line, of said concrete way from the western boundary of petitioner's lot to the eastern boundary thereof a stout wire fence about five feet in height, strung on substantial posts, and said fence completely excludes petitioner from the use of said way in ingress and egress to and from her lot and access to the beach and ocean.

"15. The said fence and the consequent exclusion from said way destroys the desirability and availability of said property for occupation by petitioner, or for rental.

"16. She has heretofore rented said property for the sum of $450 for the summer season, and it has been impossible for her to rent the same for 1935, solely because of said fence, and defendant has damaged her in said sum.

"17. The said fence and the exclusion from said way has greatly depreciated the value of said lot and improvements thereon, and destroyed their use for the purpose for which they were bought by petitioner.

"18. The said fence is a continuing trespass and nuisance.

"19. The damages caused thereby are irreparable, irremediable, and incapable of accurate ascertainment.

"20. She is without remedy at law."

The prayers were identical with those contained in the first count.

■ The court did not err in sustaining the demurrer. We will consider each count in the order in which it appears in the petition. To sustain the first count the plaintiff relies upon the principle that if a grantor sells a tract of land and in his deed describes the tract as bounded by a private way over his land, he will be estopped from denying the existence of the way as indicated in his deed, a principle which applies with equal force where the way or street is not expressly described in the deed of conveyance but is shown upon a survey or plat mentioned therein. *Schreck* v. *Blun,* 131 *Ga.* 489 (62 S. E. 705) ; *Wimpey* v. *Smart,* 137 *Ga.* 325, 328 (73 S. E. 586). It seems that the rule may also be applied in some circumstances even though the street or way is not contiguous to the property conveyed. *Ashford* v. *Walters,* 160 *Ga.* 350 (2) (127 S. E. 758). The allegations, however, do not show sufficient facts for the application of such principle in the case at bar. It appears that the seller owned a parcel of land

bounded on the east by the Atlantic Ocean and on the west by a street. He conveyed to the plaintiff the western portion of the lot, but in the deed described the property sold as bounded on the north by the northern ten feet of the existing lot of the seller. This was not to describe the property sold as bounded by a street or way on the north side. Attached to the deed, however, was a plat of the property conveyed, and on the map the words "Cement Driveway" appeared on the northern ten feet. In the circumstances, the word "Driveway" indicated only the existence of a passage or driveway belonging solely to the seller, and did not show an intention between the parties that any right or use in regard to it was conveyed to the purchaser. The deed, in describing the property conveyed as being bounded by "the northern ten feet" of the seller's tract, showed that the strip of ten feet was reserved to the same extent as other portions of the seller's tract, and the map itself contained nothing inconsistent with such description. Under the facts, the words "Cement Driveway" were merely descriptive in part of the property not conveyed, and the map containing these words had no greater significance toward enlarging the grant than if it had shown that a garage, servant's house, or some other object was situated upon such strip. A cement driveway on a private lot is ordinarily intended for the exclusive use of the owner; and so the words here in question do not signify that the use was to be shared with another. Accordingly, the allegations that said way was created for the common use of the owners of the portions of the lot was a mere conclusion of the pleader, not only unsupported by the facts, but actually contrary to the agreement of the parties as expressed in the deed and the map attached thereto as an exhibit.

Counsel for the plaintiff has cited certain rules for the construction of contracts; but these rules are irrelevant, because the instruments are unambiguous and do not require construction. The petition does not allege that the seller made any statements or representations as to the joint or common use of the driveway, or show any fact or circumstance which should have misled the plaintiff, in view of the plain terms of the written instrument under which she claims. The allegation that the seller knew that the plaintiff was relying upon the right to use the way, and that she began the construction of a garage while laboring under this

impression, did not state ground for estoppel, because the seller did not owe her any duty to correct her own misinterpretation, where he had done nothing to bring about such misunderstanding, and the deed itself did not justify it. From what has been said, the allegations that the price paid for the lot without the use of the way was unreasonable, and that the way was the chief inducement for the purchase, did not help the plaintiff's case.

The petition also contained an allegation as to continuous and unobstructed use of the way by the plaintiff for a period of nearly ten years. This averment was not sufficient to establish an easement by prescription, because it did not appear that the plaintiff had kept the way open and in repair for the period of seven years, or, as for that matter, for any period whatever. *Nashville, Chattanooga & St. Louis Ry.* v. *Coats,* 133 *Ga.* 820 (66 S. E. 1085); *Johnson* v. *Sams,* 136 *Ga.* 448 (2) (71 S. E. 891); *Rogers* v. *Wilson,* 171 *Ga.* 802 (4) (156 S. E. 817); *Elliott* v. *Adams,* 173 *Ga.* 312 (4) (160 S. E. 336); *First Christian Church* v. *Realty Investment Co.,* 180 *Ga.* 35 (178 S. E. 303).

It is further contended that the plaintiff acquired the right to use the driveway under the principle that a private way over the adjoining land of the seller may arise by implication of law, when such right is necessary for the reasonable enjoyment of the land purchased. Code of 1933, § 85-1401. There is no merit in this contention; for in such case the right is based on necessity, and not convenience. *Charleston & Western Carolina Ry. Co.* v. *Fleming,* 119 *Ga.* 995 (2) (47 S. E. 541); *Gaines* v. *Lunsford,* 120 *Ga.* 370 (47 S. E. 967, 102 Am. St. R. 109). This cement driveway might supply to the plaintiff a more convenient access to the waterfront, but it does not appear that she could not reach the water by some other route. The petition shows that the lot conveyed to her was bounded on the west by Main Street or Butler Avenue. It is not shown that this street would not afford her a way to the waterfront. It follows that the first count of the petition did not state a cause of action. This conclusion accords with the following authorities: *Aiken* v. *Wallace,* 134 *Ga.* 873, 874 (68 S. E. 937); *Hogan* v. *Cowart,* 182 *Ga.* 145 (184 S. E. 884); Tyler on Boundaries (1876), 118; Washburn on Easements and Servitudes (1885), 81, 87; 19 C. J. 915, § 104.

■ The second count proceeds upon the theory of a parol li-

cense and expense incurred. The petition alleged that after the plaintiff had expended about $80 in improvements she learned that the seller's wife, now the defendant, had objected to the sale, and on receiving this information the plaintiff approached the vendor with reference thereto, and was assured by him that she, the plaintiff, "should always have the use of said way," and alleged further that acting upon this assurance and with the knowledge of the vendor she proceeded to improve the lot purchased by her at a cost of $3000. Section 85-1404 of the Code of 1933 declares: "A parol license is primarily revocable at any time, if such revocation does no harm to the person to whom it has been granted; but it is not revocable when the licensee has executed it and in so doing has incurred expense. In such case, it becomes an easement running with the land." The principle embodied in this section is that if the enjoyment of the license must necessarily be preceded by the expenditure of money and the licensee has incurred expense in executing it, the license becomes an agreement for a valuable consideration and the licensee a purchaser for value. *Woodruff* v. *Bowers,* 165 *Ga.* 408 (140 S. E. 844). "The license becomes irrevocable when the licensee, on the faith of the license, expends money and erects valuable improvements necessary to enjoy the license." *Brantley* v. *Perry,* 120 *Ga.* 760 (48 S. E. 332). In this case the improvements were made upon the plaintiff's own property, and did not enhance the value of the driveway in the slightest degree so far as the licensor was concerned. No consideration whatsoever flowed to him, and nothing the plaintiff did affected the driveway to any extent. The driveway was already intact and suitable for use. There was no necessity for the plaintiff to incur any expense in passing over it or in putting it in condition for such use, and no such expense was incurred. The plaintiff did build her garage so near to the driveway that it is impossible for her to drive a car in or out of the garage without at the same time using the way; but there is nothing to show that such location of the garage was actually necessary to the enjoyment of the license or that a different and equally suitable location could not have been selected. The plaintiff has suffered no detriment in the sense in which a detriment may amount to a consideration, because it appears from the petition that she has parted with nothing. She has surrendered no right, and still has her lot and all

of the improvements made thereon. Under the allegations, the plaintiff merely improved her own property in the expectation of enjoying the license; and under the authorities this was not such. an expenditure as would make the license irrevocable. In such case it can not be said that the license becomes an agreement for a valuable consideration and the licensee a purchaser for value. See, in this connection, *Sheffield* v. *Collier,* 3 *Ga.* 82; *Mayor &c. of Macon* v. *Franklin,* 12 *Ga.* 239; *Winham* v. *McGuire,* 51 *Ga.* 578; *Southwestern Railroad* v. *Mitchell,* 69 *Ga.* 114; *City Council of Augusta* v. *Burum,* 93 *Ga.* 68, 74 (19 S. E. 820, 26 L. R. A. 340); *Hiers* v. *Mill Haven Co.,* 113 *Ga.* 1002 (39 S. E. 444); *Cherokee Mills* v. *Standard Cotton Mills,* 138 *Ga.* 856 (76 S. E. 373). So the second count also failed to state a cause of action.

In this opinion, we merely have assumed that a suit in equity would be an available remedy, if the plaintiff's rights were as claimed in the petition; but see *Braswell* v. *Clark,* 180 *Ga.* 727 (180 S. E. 486), and cit.

*Judgment affirmed. All the Justices concur, except Atkinson and Gilbert, JJ., who dissent.*