## A07A0689. DECKER CAR WASH, INC. v. BP PRODUCTS NORTH AMERICA, INC.
### (649 SE2d 317)

ELLINGTON, Judge.

The Superior Court of Fulton County granted the motion for summary judgment filed by BP Products North America, Inc. in the action to enforce an easement filed by Decker Car Wash, Inc. The trial court denied Decker's cross-motion for summary judgment. Decker appeals, contending that, pursuant to OCGA § 44-9-4, a parol license to use BP's property had ripened into an easement running with the land in favor of Decker's property. For the reasons that follow, we affirm.

Viewed in the light most favorable to Decker,[1] the undisputed evidence showed that Miles F. Daly, Sr. bought 2980 Piedmont Road, Atlanta, in 1964 and operated a car dealership there for the next 30 years. When Daly bought the property, Gulf Oil owned and operated a gas station on the adjacent property, which was at the corner of Piedmont Road and Pharr Road. Daly deposed, without contradiction, that

> [s]tarting in approximately 1965, and continuing to 1995, [he] had several verbal conversations with the owners and operators of the Gulf Station property. . . . In the course of these conversations, [Daly and the owners and operators of the Gulf Station] agreed to maintain a mutually beneficial black topped driveway on an area of [Daly's] property, whereby

---

[1] In order to prevail on a motion for summary judgment under OCGA § 9-11-56, the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law. Moreover, on appeal from the denial or grant of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. (Citations and punctuation omitted.) *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

parties leaving [Daly's] property could use this area for egress to the Gulf Station property for vehicular and pedestrian traffic, to allow [his] customers to go and purchase gas at the station, and exit through the Gulf Property to the curb cuts on Pharr Road and to enable such customers to turn left onto Pharr Road or to turn right onto Pharr Road to use the traffic signal at that corner.

Daly and Gulf Oil constructed a driveway connecting the properties. BP became the owner of the gas station in 1985, through a corporate merger, and Daly's customers continued using the driveway.

Daly closed the car dealership in 1995. After dividing 2980 Piedmont Road into two subparcels, Daly leased the subparcel adjacent to the gas station to Decker in 2001. Decker built a large car wash on the property, at great expense, which opened in 2003. In 2004, Decker's owner, Francis Lynch, learned that BP had decided to replace the store on its property and to reconfigure the parking lot. BP erected a chain barricade across the driveway that connected the BP station and Decker's car wash and later built a solid wall there.

Decker brought this action seeking a declaratory judgment, a temporary restraining order, and damages. After a hearing, the trial court denied Decker's request for injunctive relief. After a second hearing to consider the parties' cross-motions for summary judgment, the trial court granted BP's motion and denied Decker's motion.

Decker asserts that, because Daly and Gulf Oil mutually agreed to link their properties with a driveway and to allow use by the other for ingress and egress and then Daly incurred expenses in the execution of the license, the license ripened into an easement running with the land which Decker is entitled to enforce. In the alternative, Decker asserts that in 2003 BP gave Decker a parol license to use the gas station property for ingress and egress, and similarly that it incurred expenses in the execution of the license which ripened into an easement running with the land.

Under the Statute of Frauds, an oral agreement conveying an interest in land is unenforceable. OCGA § 13-5-30 (4). One limited exception to the Statute of Frauds is set out in OCGA § 44-9-4, as follows:

A parol license to use another's land is revocable at any time if its revocation does no harm to the person to whom it has been granted. A parol license is not revocable when the licensee has acted pursuant thereto and in so doing has incurred expense; in such case, it becomes an easement running with the land.

This executed parol license doctrine is essentially one of estoppel.[2] As the Supreme Court of Georgia explained in a case upon which the Code section was based, "where acts have been done by one party, upon the faith of a license given by another, the [licensor] will be estopped from revoking it to the injury of the [licensee], and this even if the exercise of the right given by the license, is of a nature to amount to the enjoyment of an easement or other incorporated hereditament." *Sheffield v. Collier*, 3 Ga. 82, 87 (1847). A license subject to this exception is one such as permission to erect a building or other structure, "which in its own nature seems intended to be permanent and continuing." Id. at 86. In the case of such a license, the licensee would necessarily have to incur expense to execute the agreement and would sustain a resulting loss if the licensor were entitled to later revoke the license. Id.[3] When the enjoyment of a license must necessarily be preceded by the expenditure of money, and when the licensee "has made improvements or invested capital in consequence of it, he has become a purchaser for a valuable consideration." Id. at 88.[4] This is so because such a license "is a direct encouragement to expend money, and it would be against all conscience to annul it, as soon as the benefit expected from the expenditure is beginning to be perceived." (Punctuation omitted.) Id. at 88-89. In other words, where the license has been executed, "in distinction from cases where it is executory only," it becomes irrevocable. Id. at 85.[5]

---

[2] See *Cherokee Mills v. Standard Cotton Mills*, 138 Ga. 856, 859-860 (1), (2) (76 SE 373) (1912) (where one mill company granted another company a license to use a spur railroad track that crossed licensor's property, and in reliance thereon the licensee built a mill on its own property at great expense and thereby executed the license, the license ripened into an easement appurtenant to the land). See also Restatement of the Law (Third) of Property: Servitudes, § 2.9 (2000 ed.); Herbert T. Tiffany and Basil Jones, 3 Tiffany Real Prop. § 834 (Revocability of license – Effect of improvements by licensee) (1939).

[3] As examples of licenses *not* subject to this exception, on the other hand, the Court noted "acts which consist in repetition, as to walk in a park, to use a carriage-way, to fish in the waters of another, or the like; which license, if countermanded, the party is but in the same situation he was before it was granted." *Sheffield v. Collier*, 3 Ga. at 86. See also *Strozzo v. Coffee Bluff Marina Property*, 250 Ga. App. 212, 215-216 (2) (550 SE2d 122) (2001) (where the licensor expressly permitted the licensee to erect a gear shack on her riverfront property and to conduct its marine rescue operations from there, and licensee built the gear shack and thereby executed the license, which was "a license to construct something permanent and enduring attended with expense" and "not a mere license to walk in a park, to use a roadway, to fish in the waters of another, or the like," the license ripened into an easement).

[4] See also *McCorkle v. Morgan*, 268 Ga. 730, 731 (492 SE2d 891) (1997) (OCGA § 44-9-4 "is based on the principle that a license becomes an agreement for a valuable consideration, and the licensee a purchaser for value, where the enjoyment of the license must necessarily be preceded by the expenditure of money") (citations and emphasis omitted).

[5] See also *Bell Indus. v. Jones*, 220 Ga. 684, 686-688 (141 SE2d 533) (1965) (where a licensor granted a licensee permission to install a pipe on the licensor's land and to use it to dispose of its industrial waste water on the licensor's land, and the licensee expended money to install the pipe and thereby executed the license, the license ripened into an easement running with the land); *Mathis v. Holcomb*, 215 Ga. 488, 488-490 (1) (111 SE2d 50) (1959) (where a licensor

As noted in the Restatement, "[t]he power to dispense with the Statute [of Fraud]'s requirements to give effect to the intent of the parties [to an oral agreement to create a servitude] should be exercised with caution[,] because of the risk that exceptions will undermine the policies underlying the Statute of Frauds[,]" and only when necessary to prevent injustice. Restatement of the Law (Third) of Property: Servitudes, § 2.9 (b). Where the execution of a parol license does not require erecting a structure on the licensor's land, Georgia courts have generally recognized the creation of an irrevocable easement only where the licensee's enjoyment of the license is necessarily preceded by some investment of funds which increases the value of the licensor's land to the licensor. *Cox v. Zucker*, 214 Ga. 44, 51-52 (3) (102 SE2d 580) (1958) (despite the fact that in reliance on a license the licensee erected a building that could only be reached by crossing the licensor's property, the license was revocable where the licensee did nothing to improve the burdened estate); *Tift v. Golden Hardware Co.*, 204 Ga. 654, 667-669 (6) (51 SE2d 435) (1949) (license was revocable where a hardware company built a warehouse in anticipation of using a spur track across the licensor's property but did nothing to enhance the value of the spur track on the subservient property). In these cases, the mere fact that a licensee erects improvements upon his own land in the expectation of enjoying a parol license, and thereby incurs expense, is not enough to make the license irrevocable under OCGA § 44-9-4.[6]

---

granted a licensee permission to build a private way on the licensor's land and to use it to pass from a public road to the licensee's back yard, and the licensee expended money to build the driveway and thereby executed the license, the license ripened into an easement running with the land); *Brantley v. Perry*, 120 Ga. 760, 761-762 (48 SE 332) (1904) (where a licensor granted a licensee permission to construct a ditch on the licensor's land and to use it to drain the licensee's land, and the licensee expended money to construct the ditch and thereby executed the license, the license ripened into an irrevocable easement); *Southwestern R. v. Mitchell*, 69 Ga. 114, 122-125 (2) (1882) (where a licensor granted a licensee permission to erect a part of a mill dam on the licensor's land and to overflow a part of that land, and the licensee expended money to build the dam and thereby executed the license, the license became irrevocable); *Lowe's Home Centers v. Garrison Ridge Shopping Center*, 283 Ga. App. 854, 855-856 (643 SE2d 288) (2007) (where a licensor granted a licensee permission to install a sign on the licensor's property, and the licensee expended money to install the sign and thereby executed the license, the license ripened into an easement running with the land); *Hopkins v. Virginia Highland Assoc.*, 247 Ga. App. 243, 244-245 (1) (541 SE2d 386) (2000) (where a licensor granted a licensee permission to install a sewer line across the licensor's property and to use it to connect with the municipal water system, and the licensee expended money to install the sewer line and thereby executed the license, the license ripened into an easement running with the land).

[6] See also *Dolvin v. Caldwell*, 214 Ga. 687, 689-690 (2) (107 SE2d 199) (1959) (approving this jury instruction: "[I]n cases where a person claims that he has an irrevocable parol license to use lands of another, the person claiming such right must show that he has invested some substantial amount in exercising the license on the land effected thereby, and expenditures made in connection with improvements on adjacent land of the one claiming the license are not to be considered as such expense as will prevent the revocation of such license, even though these improvements were made with the expectation of being able to continue using the

To the extent Decker contends a license of ingress and egress granted to Daly ripened into an easement that runs with the land, there is no evidence that Daly built any structure or improvement on BP's land such as would bring it within the cases cited in note 5, supra. Furthermore, despite Daly's expenditures improving his own land in the expectation of enjoying the license, there is no evidence Daly invested a substantial amount in improving BP's land. As a result, we conclude that the undisputed evidence established that Daly did not act pursuant to the oral license of ingress and egress and in so doing incur expense in consequence of the license, as those terms are used in OCGA § 44-9-4. See *McCorkle v. Morgan*, 268 Ga. 730, 731 (492 SE2d 891) (1997) (where licensees used a parking lot for six years before incurring any expenses in connection with it, "the licensee's enjoyment of the license was not preceded necessarily by the expenditure of money," and, therefore, the license did not ripen into an easement pursuant to OCGA § 44-9-4). Before BP's predecessor-in-interest granted Daly the license, Daly operated a car dealership (and later Decker operated a car wash) on his property, and ingress and egress was on Piedmont Road. After BP revoked the license, Decker operated the existing car wash, and ingress and egress for Daly's property was on Piedmont Road. Because Daly's parol license to use BP's land did not ripen into an easement pursuant to OCGA § 44-9-4, it follows that BP was entitled to revoke the license.

To the extent Decker contends a license of ingress and egress granted directly to it ripened into an easement, there is no evidence that BP granted Decker any such license. OCGA § 44-9-4 "is operative only where there is an express oral license; [i]t does not apply to implied licenses[,]" as may be presumed from the acts of the licensor. *Berolzheimer v. Taylor*, 230 Ga. 595, 600 (198 SE2d 301) (1973). While there is evidence that Decker's owner believed and assumed that Decker had permission to use the gas station for ingress and egress,

---

license."); *Miller v. Slater*, 182 Ga. 552, 558-559 (2) (186 SE 413) (1936) (license to use a neighbor's driveway was revocable, even though the plaintiff built a garage "so near to the driveway that it is impossible for her to drive a car in or out of the garage without at the same time using the way" on the licensor's property, based on the following factors: the driveway was already intact and suitable for use and there was no necessity for the licensee to incur any expense in passing over the driveway or in putting it in condition for such use; the improvements the licensee made were on her own property "in the expectation of enjoying the license" and "did not enhance the value of the driveway in the slightest degree so far as the licensor was concerned"; there was nothing to show that the "location of the garage was actually necessary to the enjoyment of the license or that a different and equally suitable location could not have been selected"; and the licensee did not part with anything amounting to a consideration, in that she had surrendered no right and still had her lot and all of the improvements made thereon); *Blake v. RGL Assoc.*, 267 Ga. App. 709, 710 (1) (600 SE2d 765) (2004) (where a licensor granted a parol license to cross the licensor's property to access an adjacent highway and the licensee incurred expenses in making necessary improvements both to its property and to the licensor's property, the license ripened into an easement).

there is no evidence that an authorized agent of BP ever granted Decker *express* permission to do so.[7] It follows that BP was entitled to terminate Decker's use of BP's property. Id.

Because no jury issue has been presented regarding whether any parol license to use the gas station property ripened into an easement running with the land, the trial court correctly granted BP's motion for summary judgment.

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED JULY 3, 2007 —

W. *Dent Acree*, for appellant.
*Seacrest, Karesh, Tate & Bicknese, Karsten Bicknese*, for appellee.

---

[7] Decker's owner deposed that, before leasing the subparcel from Daly, he "saw that cars were exiting onto [Pharr Road] – it was defacto an exit, so [he] imagined that that was something you could do." Use of the driveway connecting the parcels "didn't need to be discussed because it was defacto, a fact. There was no need. . . . Everybody knew . . . that the cars were going in both directions through this" driveway. Decker's owner further deposed that a man he "took to . . . be" a BP manager told him that BP's business had increased as a result of the opening of Decker's car wash and that someone a Decker employee "believed to be like an area manager type person" reportedly "discussed the beneficial effects of the [car wash] patrons going to purchase gas at the BP pumps." Pretermitting whether these statements were admissible, they do not amount to an express license to use BP's property.