## ELECTRIC RAILWAY COMPANY OF SAVANNAH *v.* TENNESSEE COAL, IRON & RAILWAY CO.

1. Where a contract is entered into between two parties, by the terms of which one undertakes to sell and the other to buy certain articles, a given quantity of which is to be delivered daily for a period not specified, such contract, if no time is fixed by law or usage for its termination, is at the will of either party and continues in force until one gives notice to the other of an intention to put an end to the agreement.

2. There being evidence from which the jury might have inferred that the sale of coal was made in contemplation of the fact that its breach by the plaintiff might result in damages to the defendant of the character set up in its plea, and there being also evidence authorizing a finding that the defendant had sustained such damages to at least some amount, it was error to pass an order which, in effect, struck the plea and directed a verdict for the plaintiff for the full amount of the account upon which its action was brought, although the correctness of that account was admitted.

March 16, 1896. Argued at the last term.

Complaint on account.   Before Judge MacDonell.   City court of Savannah.   May term, 1895.

*Charlton, Mackall & Anderson,* for plaintiff in error.
*H. W. Johnson,* contra.

ATKINSON, Justice.

The plaintiff sued the defendant for a balance due upon the purchase price of certain coal alleged to have been delivered by the former to the latter.   To this action the defendant pleaded, admitting the correctness of the plaintiff's demand, and its liability in the first instance for the sum claimed.   Further, it pleaded in substance, by way of recoupment, that it was engaged in running an electric railway; that in the generation of steam it was necessary for it to have considerable quantities of coal; that under the contract previously made, and under which the coal sued for was actually delivered, it had been purchasing coal from the plaintiff to be used in the conduct of its business; that having learned that a labor strike was soon to occur at the mines of the plaintiff, it made an agreement with the plaintiff, by the terms of which it undertook to deliver certain other coal than that covered by the first agreement, to the amount of three car-loads a day; that in making this last agreement, the defendant called attention to the anticipated strike, and advised the plaintiff that its purpose in purchasing additional coal was to provide against the consequences in the event such a strike should occur; that plaintiff knew the

business in which defendant was engaged, that it was absolutely necessary for it to have coal in the successful conduct of that business, and that if defendant's supply of coal ever became exhausted it would suffer serious loss as a consequence; that said strike, if occurring at all, did not occur until after the lapse of nine days from the date upon which the plaintiff undertook to commence to deliver the coal so agreed to be delivered; that plaintiff wholly failed to comply with said agreement, and as a consequence the supply of defendant's coal became exhausted, and it became necessary for it to go into the market and buy other coal in its stead. The plea stated the contract price and the price at which the defendant in open market was compelled to purchase coal; and alleged that in consequence of the non-delivery of coal by the plaintiff, defendant was damaged in the sum of two hundred dollars. By amendment it further pleaded, upon the premises above recited, that, having purchased coal in the open market, it was unable to buy coal of such a quality as that contracted to be delivered by the plaintiff, and that it was compelled to accept such coal as it could buy, and use in its business; that the coal so purchased was of an inferior quality, it being unable to procure a better quality, and hence that in the generation of steam it took a larger quantity of the coal so purchased than would have been necessary had the plaintiff delivered the coal as contracted; that the amount expended by defendant for such coal, in excess of that which it would have been required to pay the plaintiff, amounted to two hundred and forty-six dollars. The defendant offered evidence which, if believed by the jury, would have established the facts recited in its plea; and upon the conclusion of the evidence the court directed a verdict in favor of the plaintiff. Exception was taken to this direction of the court, and error is assigned thereon.

1. We think this direction upon the part of the court was error. The contract between the parties was legally estab-

lished; and while no time was specified for its continuance, its terms were otherwise fully agreed upon. The plaintiff could not without notice to defendant abandon the agreement. Where no time is specified for the continuance of such an agreement, the plaintiff is bound to deliver and the defendant is bound to receive the articles sold in accordance with the terms of the contract, and neither is at liberty to abandon it, except upon notice to the adverse party. The rule is stated as follows: "If a continuous contract fixes no time during which it is to last, and no time is fixed by law or usage, it may be terminated at the will of either party by notice." Clark on Contracts, 626; 46 Penn. St. 426; *Ibid.* 434; 86 Ill. 142. There is no law of force in this State which fixes the time for the termination of such an agreement, nor did the evidence show the existence of any custom or usage which varies the rule above stated; the contract, therefore, fell within it, and the plaintiff was bound to perform.

2. The damages were not too remote or consequential to be the basis of a recovery. According to the averments of the plea, and the evidence submitted in support of it, the damages actually sustained might properly have been found by the jury to have been within the contemplation of the parties at the time the contract was made for the delivery of coal. The rule in such cases in this State is: "Damages which may reasonably be considered as in contemplation of the parties when the contract was made, are not too remote." *Van Winkle & Co.* v. *Wilkins*, 81 *Ga.* 93. The effect of the direction of the verdict by the court was to withdraw from the consideration of the jury the questions of fact which should have been left to their determination. We think, therefore, that the court erred in directing a verdict for the plaintiff; and its judgment is accordingly                *Reversed.*