## LEDERLE *v.* CITY OF ATLANTA.

HINES, J. 1. Under a written contract between a contractor and the City of Atlanta, the consideration of which was the mutual covenants of the parties thereto, whereby the contractor was given the right to sell or dispose of the sludge accumulating at the disposal plants of the city during the period beginning December 1, 1916, and ending December 31, 1917, with the privilege to the contractor of renewing the contract for an additional period of five years under the same terms, which was done, and under which the contractor was to have the right and privilege of disposing of the annual output of sludge from said plants, and was to remove the sludge from the sludge-beds as directed by the officer or employee of the city having charge of said plants; and where the city entered into said contract for the purpose of saving the expense which it would have to incur in the removal of the sludge from the sludge-beds of its disposal plants; and where the contractor made improvements and invested capital which must necessarily have preceded the enjoyment of the license granted him under said contract, it became an agreement for a valuable consideration, and the licensee a purchaser for value. *Hiers* v. *Mill Haven Co.*, 113 *Ga.* 1002 (39 S. E. 444) ; *Harrell* v. *Williams*, 159 *Ga.* 230 (125 S. E. 452).

2. Where, after the expiration of the period fixed by the renewal of the contract for the removal of the sludge from the sludge-beds of the disposal plants of the city, the contract was by mutual consent of the parties continued in force and effect upon the same terms and conditions as those prescribed in the written contract, but no time was fixed for its termination, the general council of the city could, by resolution and notice to the contractor, terminate said contract at any time. *Electric Railway Co.* v. *Tennessee Coal Co.*, 98 *Ga.* 189 (26 S. E. 741). Thereafter the contractor would not have the right to remove sludge from

---

Contracts, 13 C. J. p. 324, n. 24 New.

Judgments, 34 C. J. p. 799, n. 79; p. 800, n. 84; p. 806, n. 17; p. 808, n. 38; p. 895, n. 32, 34; p. 1060, n. 12.

Municipal Corporations, 28 Cyc. p. 640, n. 78; p. 657, n. 98 New; p 674, n. 20.

Pleading, 31 Cyc. p. 352, n. 52; p. 353, n. 54, 55.

the sludge-beds of the disposal plants of the city. *Morgan* v. *Perkins,* 94 *Ga.* 353 (21 S. E. 574); *Warren* v. *Ash,* 129 *Ga.* 329 (58 S. E. 858); *Shippen Lumber Co.* v. *Gates,* 136 *Ga.* 37 (70 S. E. 672); *Jones* v. *Graham,* 141 *Ga.* 60 (80 S. E. 7).

3. Where, during the term of the renewed contract and during the period when the contract was continued in force and effect by the mutual consent of the parties, sludge was removed by the contractor from the sludge-beds and deposited upon the property of the city with its consent, the title of the contractor thereto was not lost merely by his failure to remove the same from the property of the city during the life of the contract. *Johnson* v. *Truitt,* 122 *Ga.* 327 (50 S. E. 135); *Jones* v. *Graham,* supra.

4. After the termination of the contract by the city, it was incumbent upon the contractor to remove the sludge taken from the sludge-beds and deposited upon the land of the city, within a reasonable time; and on his failure to do so, his interest in such deposits would cease and determine. *McRae* v. *Stillwell,* 111 *Ga.* 65 (36 S. E. 604, 55 L. R. A. 513); *Goette* v. *Lane,* 111 *Ga.* 400 (36 S. E. 758); *Shippen Lumber Co.* v. *Gates,* supra.

5. What would be a reasonable time for so doing would be a question of fact to be determined in the light of all the facts and circumstances of the case. *Shippen Lumber Co.* v. *Gates,* and *Harrell* v. *Williams,* supra.

6. Where a general demurrer to a petition is sustained, with leave to the plaintiff to amend, such ruling upon the demurrer fixes the law of the case; and unless the plaintiff by amendment sets up new facts which, when taken in connection with the allegations of the petition, make a case which will entitle him to recover, a demurrer to the petition as amended, upon the ground that the judgment sustaining the former demurrer concluded the right of the plaintiff to recover, should be sustained. *Kennedy* v. *Ayers,* 164 *Ga.* 277 (138 S. E. 155).

7. Where in the original petition the only relief sought by the plaintiff was an injunction restraining the city from using sludge deposits at its disposal plants, and from interfering with him in removing said sludge-deposit beds, and for services rendered by him to the city, and where in his amendment to his petition the plaintiff alleged that the city had taken possession of 1950 tons of sludge which he had removed from the sludge-beds of the city's disposal plants and deposited with the city's consent upon its property, and of certain improvements put upon the city's property and which the contractor had the right to remove under the contract, all of the value of $4,000, for which he prayed judgment, the plaintiff was not concluded by the judgment on the demurrer to his petition as it stood without amendment.

8. Applying the above rulings, the court below erred in sustaining the demurrer to the petition as amended, and in dismissing the action.

*Judgment reversed. All the Justices concur.*

No. 5782. June 30, 1927.

Equitable petition. Before Judge Pomeroy. Fulton superior court. November 10, 1926.

On December 1, 1916, Lederle and the City of Atlanta, in con-

sideration of the mutual covenants therein contained, entered into a contract in writing, whereby Lederle was given the right to sell or dispose of the sludge accumulating at the three disposal plants of the city, during the period beginning December 1, 1916, and ending December 31, 1917, with the privilege to Lederle of renewing the contract for an additional period of five years upon the same terms, in which event Lederle was to have the right and privilege of the disposal of the annual output of sludge of said plants for the full period of the renewed contract. By this contract the city agreed to give to Lederle the sludge accumulating at said plants free of charge, and Lederle agreed to move the sludge from the sludge-beds as directed by the officer or employee of the city having charge of said disposal plants. It was further agreed that the acceptance of said sludge in the beds and its removal therefrom as directed by said official or employee would save the city fifteen cents per cubic yard, which the city would otherwise have to pay for its removal and disposal. Lederle further agreed, in view of the benefits arising to him, or the profits that might accrue from the disposal of said sludge, to keep the sludge-beds free of sludge as far as possible, and to maintain and care for said beds as directed by the official or employee of the city in charge of the same, meaning by this the keeping of the beds resanded, keeping grass from growing thereon, and similar work, as might be ordered by said official or employee. Lederle especially agreed and undertook not to allow the sludge to accumulate around said plants in such amounts as said official or employee of the city might deem excessive, of which said official or employee was to be the exclusive judge. The city further agreed to permit Lederle or his assignees to construct whatever buildings might be necessary for the handling of said sludge, provided the location of the same was approved by said official or employee, and that in no event should they be located so as to interfere with the operation of the sewage plants. The city further agreed that Lederle or his assignees might be permitted to remove said buildings from the property of the city at the termination of the contract, that it would be his duty to remove them at his own expense, and restore the property to the city in its present condition at his expense. By the contract, should Lederle or his assignees fail to carry out any of its provisions, the city had the right on its own motion, on ten days notice to him or

his assignees, to cancel the contract; and when canceled, any buildings on the property should be removed therefrom by him or his assignees, and the property restored to the city in its present condition at the expense of Lederle or his assignees.

Lederle exercised his privilege of renewal, and the contract was renewed for a period of five years, on December 31, 1917. On December 31, 1922, by mutual consent of Lederle and the city, this contract was continued in force and effect upon the same terms and conditions as therein set out. Thereafter the general council of the city passed a resolution that on and after August 1, 1925, the said contract should terminate and be at an end, and that the plaintiff would not be allowed on and after that date to remove from the sewage-disposal beds any of the sludge thereon. On July 2, 1925, Lederle was notified by the chief of construction of the city of said resolution. During the years said contract was in force there had been accumulated at the Peachtree creek plant a large deposit or supply of sludge, through the efforts of Lederle, and at an expenditure by him of considerable money and labor. It was deposited on the property of the city, which the city does not need for the present disposal of its sludge and for the proper operation of its disposal plant. At the time Lederle took over the disposal of the sludge from said plants its disposal presented quite a problem to the city, and its removal was creating an expense to the city, from which expense the city was relieved by the contract with Lederle. He has expended a large sum of money in keeping the drying-beds of said plant clean and ready for use, and in storing the sludge in the deposits where it is now stored. The sludge at the Peachtree creek and Proctor creek plants, amounting to approximately 100 tons, is the property of Lederle, and the result of his labor under said contract, and said deposits have been built up at an expense to him. The city has informed Lederle that it intends to use said sludge deposit which belongs to him, and is threatening to do so after August 1, 1925. Unless restrained from so doing, the city will use and dissipate said sludge deposits, to his irreparable damage. He filed his petition against the city, in which he made the foregoing allegations, and prayed that the city be enjoined from using said sludge deposits at both of said plants, and from interfering with him in removing said sludge-deposit bed; and for judgment for the sum of $1,000 for the services rendered by him, as set out in his petition.

The city demurred to this petition on the grounds: (a) that it sets forth no cause of action, either legal or equitable; (b) that the facts alleged do not entitle the plaintiff to the relief sought; (c) that the contract under which the plaintiff claims the right to remove said sludge deposits has already expired; and (d) that the plaintiff has a full, complete, and adequate remedy at law for any wrong thus inflicted upon him, or for any damage that he may sustain.

The trial judge sustained the general demurrer, with leave to the plaintiff to amend the petition. The plaintiff amended and made these allegations: He went to great expense in carrying out the terms of the contract. In order to carry out the removal of said sludge, it was necessary for him to build narrow-gauge tracks running the entire length of the beds, and provided with dump-cars of about three fourths of a cubic yard capacity. When he took charge under said contract, it was estimated that it was costing the city fifteen cents per cubic yard to remove the sludge from the drying-beds to the dump-cars, and that was the city's reason for making the contract with the plaintiff. At the Peachtree creek plant two separate pieces of ground were prepared for drying-beds, the expenses of which were borne by plaintiff. It became necessary to have additional drying ground, which was secured by resorting to the swamp grounds, which were ditched, and a bank put around them. This additional ground was filled with sludge. There was no paved road leading to the Peachtree creek plant; it was impossible to remove the material from that plant; and the same was allowed to accumulate, with the knowledge and consent of the city, until the Howell Mill road was built in 1922, when plaintiff began to market and remove the sludge from said plant, the removal being made as rapidly as plaintiff could find a market for and remove the same, when said notice of July 3, 1925, was sent to the plaintiff, under which he had only until August 1, 1925, to remove all the sludge from said plant, and by which said contract was canceled. Up to that time he was carrying out his contract with the city. He had such a large quantity of the sludge that it was impossible for him to market and remove the same. On August 1 the mayor of the city came out to said plant and ordered him to leave it; and the city at that time took possession of his property consisting of 1950 tons of sludge of the market

value of $3000. He prayed judgment against the city for $4000, the market value of said sludge, and the value of the improvements put on the property by him.

To the petition as amended the city demurred upon the grounds: (a) that it set forth no cause of action; and (b) that the general demurrer had already been sustained, and the amendment did not change the case so as to meet said order, and hence the action should stand dismissed. There were two grounds of special demurrer. The court sustained the demurrer upon all of the grounds, and dismissed the petition. To this judgment the plaintiff excepted.

*George & John L. Westmoreland,* for plaintiff.

*J. L. Mayson* and *C. S. Winn,* for defendant.