A06A0051. MITSUI MARINE & FIRE INSURANCE COMPANY, LTD. v. HANJIN SHIPPING COMPANY, LTD. et al.
A06A0185. NORFOLK SOUTHERN RAILWAY COMPANY v. MITSUI MARINE & FIRE INSURANCE COMPANY, LTD.
(632 SE2d 467)

PHIPPS, Judge.

These appeals arise from a maritime suit to recover damages to cargo that occurred during the inland leg of its transportation from Japan to Alabama. The questions presented are whether the damages are capped by a $500 per package liability limitation contained in the Carriage of Goods by Sea Act[1] ("COGSA") and, if so, what constitutes a "package" under that act. Relying on the United States Supreme Court's 2004 decision in *Norfolk Southern R. Co. v. James N. Kirby, Pty Ltd.*,[2] the trial court found that the liability limitation did apply, and it held that pallets packed within large, intermodal containers were packages. We agree on both counts, and affirm.

---

[1] 46 USC Appx. § 1300 et seq.
[2] 543 U. S. 14 (125 SC 385, 160 LE2d 283) (2004).

Toray Carbon Fibers America, Inc. ("Toray") bought approximately 330 bobbins of acrylic yarn from its Japanese affiliate, Toray International, for use in its Decatur, Alabama manufacturing plant. Mitsui Marine & Fire Insurance Company, Ltd. insured the bobbins, which were packed for shipping onto large steel pallets that held three bobbins apiece. The pallets, in turn, were loaded into five intermodal containers.

Toray International contracted with Mitsui-Soko Company, Ltd. ("Soko"), a freight-forwarding company,[3] to act as an intermediary and arrange for the cargo's carriage to Alabama. Soko, in turn, contracted with Hanjin Shipping Company, Ltd. to transport the cargo by ship from Japan to Savannah. Hanjin then hired Norfolk Southern Railway Company to transport the cargo by train from Savannah to an Alabama rail facility. The bobbins apparently reached Savannah unharmed. During the inland leg of the journey, however, 89 of the pallets (containing 267 bobbins) allegedly were damaged when Norfolk Southern used a process called "humping" to join certain rail cars.

Toray filed an insurance claim with Mitsui to recover $267,710.07 in losses. Mitsui paid the claim, then sued Hanjin and Norfolk Southern in its capacity as subrogated insurer. Mitsui alleged that Norfolk Southern had negligently humped the rail cars and that Hanjin had negligently failed to insure that Norfolk Southern did not use the humping procedure.[4]

Hanjin sought partial summary judgment, arguing that if it was liable at all, then its liability was limited to $500 per package because its bills of lading — or contracts — with Soko incorporated a liability limitation contained in COGSA. Hanjin also argued that each pallet, not each individual bobbin, constituted a "package" for the purpose of the liability limitation. Norfolk Southern sought summary judgment on the same grounds as Hanjin, as well as on additional grounds not at issue here. The trial court granted Hanjin's motion. It ruled that COGSA's $500 per package liability limitation applied and that each pallet was a "package."

In Case No. A06A0051, Mitsui appeals, contending that the trial court erred by holding that the COGSA liability limitation applies to its claims against Hanjin and Norfolk Southern. In Case No. A06A0185, Norfolk Southern appeals, arguing that the trial court erred in finding that "package" meant pallet, and that the court instead

---

[3] "A freight forwarding company arranges for, coordinates, and facilitates cargo transport, but does not itself transport cargo." Id. at 19 (I).

[4] Hanjin also filed a cross-claim against Norfolk Southern, but that claim is not at issue here.

should have ruled that "package" referred to the larger intermodal containers that held multiple pallets. We consolidate these cases for appeal and affirm the trial court's ruling.

1. *Case No. A06A0051: Whether the COGSA liability limitation applies.*

COGSA governs bills of lading for the carriage of goods "from the time when the goods are loaded on to the time when they are discharged from the ship."[5] During that period, COGSA limits the carrier's liability for any damage to the goods to a maximum of $500 "per package" unless the shipper declares a higher value on the bill of lading.[6] COGSA also permits the contractual extension of this default liability limitation to the entire period during which the goods will be under the carrier's control, including during any land leg of the journey.[7] In addition, the liability limitation can be contractually extended to apply to agents or independent contractors of the carrier, including so-called "downstream" inland carriers such as Norfolk Southern.[8]

Hanjin and Norfolk Southern rely on language in Hanjin's three bills of lading[9] with Soko, the freight-forwarding company that contracted with Hanjin on Toray's behalf. Those bills of lading contained terms limiting the liability of Hanjin, as well as its agents and subcontractors "at all stages of carriage," to the COGSA $500 per package limitation. Thus, Hanjin and Norfolk Southern argue that they should both benefit from the liability limitation. They rely on the Supreme Court's recent *Kirby* decision.

In *Kirby*, an engineering company (Kirby) hired a freight-forwarding company (ICC) to arrange the transportation of machinery from Australia to Huntsville, Alabama. ICC issued a bill of lading to Kirby incorporating the COGSA $500 per package liability limitation for any damages that might occur during the sea leg of the journey, but setting a higher liability limitation for any damages occurring during the land leg. ICC then contracted with Hamburg Sud, a German ocean shipping company, to transport the machinery. Hamburg Sud issued ICC a bill of lading that incorporated the $500 COGSA limitation for damages occurring at sea *or* on land. Hamburg

---

[5] 46 USC Appx. § 1301 (e).

[6] 46 USC Appx. § 1304 (5).

[7] See 46 USC Appx. § 1307; *Groupe Chegaray/V. De Chalus v. P&O Containers*, 251 F3d 1359, 1364 (11th Cir. 2001).

[8] A clause extending liability limitations to agents and independent contractors is known as a "Himalaya Clause." See *Kirby*, supra at 20.

[9] "A bill of lading records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." Id. at 18-19 (I) (citations omitted).

Sud hired Norfolk Southern to transport the machinery on land, but the train carrying the machinery derailed en route. Kirby sued Norfolk Southern, which sought shelter in the $500 COGSA limitation incorporated into the Hamburg Sud bill of lading. The Court held that Kirby's recovery was capped by the liability limitation even though ICC, not Kirby, had negotiated that limitation.

As an initial matter, the Court concluded that the bills of lading at issue were maritime contracts. "[S]o long as a bill of lading requires substantial carriage of goods by sea, its purpose is to effect maritime commerce — and thus it is a maritime contract," even if it also provides for some land carriage.[10] Maritime contracts are governed by general federal maritime law, not state law, unless they demonstrate some overriding local interest that maritime law cannot accommodate.[11] The Court expressed a strong presumption in favor of applying maritime law because of the need for a uniform body of law to govern international commerce.[12] And under maritime law,

> [w]hen an intermediary contracts with a carrier to transport goods, the cargo owner's recovery against the carrier is limited by the liability limitation to which the intermediary and carrier agreed. The intermediary is certainly not automatically empowered to be the cargo owner's agent in every sense. That would be unsustainable. But when it comes to liability limitations for negligence resulting in damage, an intermediary can negotiate reliable and enforceable agreements with the carriers it engages.[13]

Thus, "an intermediary binds a cargo owner to the liability limitations it negotiates with downstream carriers."[14] Norfolk Southern therefore enjoyed the benefit of the Hamburg Sud bill's liability limitation, even though neither it nor Kirby was a party to that bill.

The trial court properly ruled that *Kirby* controls this case. Here, as in *Kirby*, a cargo owner (Toray) engaged a freight-forwarding company (Soko) to arrange a transoceanic shipment. Soko then contracted with an oceangoing carrier (Hanjin) to ship the cargo, and Hanjin in turn contracted with Norfolk Southern. The three bills of lading executed by Hanjin and Soko incorporated the COGSA limitations for both legs of the journey. Under *Kirby*, Toray — and thus its

---

[10] Id. at 27 (II).
[11] Id. at 28-29.
[12] Id.
[13] Id. at 33 (III) (B).
[14] Id. at 34 (III) (B).

subrogated insurer — are bound by the liability limitations negotiated by the freight-forwarding company that Toray hired.

Mitsui argues that it should not be bound by the limitation in the Hanjin bills because its insured, Toray, was not a party to those bills. Mitsui points out that the bills state that they are "contract[s] of carriage" between "Carrier" and "Merchant." The bills define "Carrier" as Hanjin and its agents and subcontractors and "Merchant" as "any actual or previous holder" of the bill. Because Toray did not fall within the definition of "Merchant," Mitsui argues that Toray was not bound by the bills' provisions, including their COGSA liability limitations.

To support its argument, Mitsui points out that Hanjin formerly worded its pro-forma bills of lading differently, defining "Merchant" more broadly as "the shipper, consignor, owner, and receiver of the goods and holder of this Bill of Lading." As the Ninth Circuit Court of Appeals held in *All Pacific Trading v. Vessel M/V Hanjin Yosu*,[15] this broad language could allow a shipper to sue under a bill of lading to which it was not a party. In *All Pacific*, as in this case, a so-called "remote shipper" contracted with a freight-forwarding company to transport goods internationally. The freight-forwarding company in turn arranged carriage with Hanjin. When the goods were damaged en route, the remote shipper sued Hanjin, even though it was not a party to the bill of lading that Hanjin had issued to the freight-forwarding company. The Ninth Circuit held, however, that the bill's comprehensive definition of "Merchant" included the remote shipper. Mitsui asserts that after the *All Pacific* decision, Hanjin changed the definition of "Merchant" in its bills of lading to the one used here, which includes only the holder of the bill of lading. Under the present narrower language, Mitsui argues, Toray was not a party to the Hanjin bills of lading, cannot sue on them, and is not bound by any limitations in them.

In our view, however, the definition of "Merchant" in the Hanjin bills makes no difference. The *Kirby* Court plainly established a bright line default rule that "an intermediary binds a cargo owner to the liability limitations it negotiates with downstream carriers."[16]

---

[15] 7 F3d 1427 (9th Cir. 1993).

[16] *Kirby*, supra at 34. Later, the Court noted that its decision "does no more than provide a legal backdrop against which future bills of lading will be negotiated" and that "[f]uture parties remain free to adapt their contracts to the rules set forth here." Id. at 36 (IV). Presumably, future parties could negotiate bills of lading explicitly stating that the cargo owner is *not* bound by any liability limitations in the bill. No such language appears in the bills at issue here, however.

Privity of contract is not required, nor is a traditional agency relationship.[17] The Court's holding did not depend on any particular definition of the parties in the bills of lading it analyzed.[18]

Mitsui also points out that its subrogated action against Hanjin and Norfolk Southern is based not on a breach of the bills of lading, but on common law tort principles.[19] It does not matter, however, whether Mitsui proceeds in contract or in tort. The cargo owner in *Kirby* brought both contract and tort claims against the railroad, but the Court did not hold that the liability limitations in the bills of lading applied only to the contract claims. In the absence of such a distinction, we conclude that the trial court properly ruled that the liability limitations in the Hanjin bills apply to Mitsui's tort claims.[20]

2. *Case No. A06A0185: Whether "package" means "pallet."*

As noted, the bobbins of yarn were packed onto steel pallets holding three bobbins apiece. The pallets, in turn, were loaded into five large intermodal carriers. The Hanjin bills of lading defined "package" as "the single largest unit of Goods (e.g., container, pallet, box, bale) delivered by Merchant to Carrier for carriage pursuant to the terms of this Bill of Lading." Each Hanjin bill contained a column labeled "NO. OF PACKAGES OR CONTAINERS." In two of the bills, that column contained the typed words "2 CONTAINERS (44 PALLETS: 132 BOBBINS)," and in one bill it contained the typed words "1 CONTAINER (22 PALLETS: 66 BOBBINS)." Deposition testimony showed that Toray or its subsidiaries secured the bobbins onto the pallets and packed the pallets into the intermodal containers, which were then delivered to the carrier for shipment.

The trial court found that each pallet constituted a "package" for the purpose of the COGSA liability limitation. Norfolk Southern argues that the intermodal containers, not the pallets, were "packages." Mitsui, on the other hand, contends that each bobbin was a package, or, alternatively, that each pallet was a package. We agree with the trial court that each pallet was a package.

---

[17] Id. at 34.

[18] In fact, neither the Supreme Court opinion nor the Eleventh Circuit opinion that it reversed recited the definitions of "merchant" in the bills of lading at issue in that case. See *Kirby*, supra, 543 U. S. 14; *James N. Kirby, Pty Ltd. v. Norfolk Southern R. Co.*, 300 F3d 1300 (11th Cir. 2002).

[19] Mitsui initially sued on a breach of contract theory, but later amended its complaint to state only tort claims.

[20] We recognize Mitsui's argument that, in fairness, it should not be bound by defenses in a contract on which it cannot sue. The question of whether Mitsui could sue on bills of lading to which its insured was not a party, however, is not presented here, and we do not decide it. Moreover, even if the answer to that question is "no," we are required to follow the bright line default rule that the Supreme Court established in *Kirby*. As discussed in footnote 16, supra, future parties are free to craft their contracts to avoid that default rule. Additionally, Mitsui presumably is free to seek recovery from Soko, with whom its insured *is* in privity of contract.

Section 4 (5) of COGSA provides, in relevant part, that a freight carrier is not liable for losses "in an amount exceeding $500 per package" unless the owner declares a higher value on the bill of lading.[21] "Unhappily, neither [COGSA] nor its legislative history provides any clue as to the meaning of 'package' in the Act."[22] In construing COGSA § 4 (5), "courts are called [upon] to evaluate diverse and occasionally idiosyncratic items shipped in various forms — bundles, boxes, cartons, bales, coils, crates, rolls, skids, pallets, and containers — in order to determine what units, if any, constitute COGSA 'packages.' "[23] Because Georgia courts have not yet waded into this morass, we look to federal law.

Federal courts generally — and the Eleventh Circuit particularly — have held that a large intermodal container is not a COGSA package unless the bill of lading clearly states otherwise.[24] In *Hayes-Leger Assoc. v. M/V Oriental Knight*,[25] the Eleventh Circuit articulated "two rules" for interpreting bills of lading:

> (1) when a bill of lading discloses the number of COGSA packages in a container, the liability limitation of section 4 (5) applies to those packages; but (2) when a bill of lading lists the number of containers as the number of packages, and fails to disclose the number of COGSA packages within each container, the liability limitation of section 4 (5) applies to the containers themselves.[26]

Applying these rules, we reject with little difficulty Norfolk Southern's argument that the relevant package is the large intermodal container. The "NO. OF PACKAGES OR CONTAINERS" columns on the Hanjin bills list containers, but also disclose the number of pallets and bobbins therein. Under the second *Hayes-Leger* rule, the Hanjin bills' references to smaller units means that the containers were not the COGSA packages.

We thus consider whether the relevant package was each pallet or each bobbin. The Eleventh Circuit has held that "the term 'package' means the result of some preparation of the cargo item for

---

[21] 46 USC Appx. § 1304 (5).

[22] *Monica Textile Corp. v. S.S. Tana*, 952 F2d 636, 638 (2nd Cir. 1991) (citation omitted).

[23] *Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co.*, 254 F3d 987, 997 (11th Cir. 2001) (citation and punctuation omitted).

[24] See, e.g., *Monica Textile Corp.*, supra, and cases discussed therein; *Groupe Chegaray*, supra at 1368 (Eleventh Circuit approaches any attempt to define a container as a COGSA package with "great reluctance"); *Hayes-Leger Assoc. v. M/V Oriental Knight*, 765 F2d 1076 (11th Cir. 1985).

[25] Supra.

[26] 765 F2d at 1080 (II) (citation omitted).

transportation which facilitates handling but which does not necessarily conceal or completely enclose the goods."[27] Evidence showed that Toray prepared the bobbins for transportation by securing them to specially made steel pallets. This fact, coupled with the bill of lading's definition of "package" as the single largest unit of goods delivered to the carrier, leads us to conclude that the pallets, and not the bobbins, were packages.[28]

In short, the trial court was right — the packages here were the pallets.

*Judgment affirmed in both cases. Ruffin, C. J., and Smith, P. J., concur.*

<hr>

DECIDED JUNE 9, 2006.

<hr>

*Bouhan, Williams & Levy, Edwin D. Robb, Jr., Todd M. Baiad,* for Mitsui Marine & Fire Insurance Company, Ltd.

*Inglesby, Falligant, Horne, Courington & Chisholm, Glen M. Darbyshire, Roy R. Kelly IV, Brennan, Harris & Rominger, Thomas L. Bass, Jr.,* for Hanjin Shipping Company, Ltd. et al. and Norfolk Southern Railway Company.

<hr>

[27] Id. (citations and punctuation omitted).

[28] See *Groupe Chegaray/V. De Chalus v. P&O Containers,* supra at 1369-1370. There, 2,270 cartons of cosmetics and perfumes were consolidated into larger units, which were bound together with plastic wrap and packed onto forty-two pallets, which were loaded into one container. The Eleventh Circuit found that the pallets — not the cartons — were packages, in part because they had been specially packed to ensure the safe and efficient transport of the cartons.