**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: September 30, 2025

S25A0635. STATE OF GEORGIA v. DOVETEL COMMUNICATION, LLC, et al.

PINSON, Justice.

The Georgia Department of Transportation revised one of its rules that regulates the installation, relocation, and management of utilities on public rights of way. After the rule went into effect, the Department asked a group of broadband internet providers to revise their contracts with the Department to account for the rule change, which, among other things, changed the fee schedule for rights-of-way permits that had been specified in those contracts. The providers declined and instead sued the State, seeking a declaratory judgment that, among other things, their contracts with the Department were enforceable and not terminable at will by the Department. The State asked the trial court to dismiss the providers' action, because,

among other reasons, it was barred by sovereign immunity. But the trial court determined that sovereign immunity was waived under Article I, Section II, Paragraph V(b) of the Constitution of Georgia, and it granted the providers declaratory and injunctive relief.

We agree with the trial court that sovereign immunity is waived under Paragraph V for the providers' action for declaratory relief. As that provision requires, the providers have sought "declaratory relief" in the form of declaratory judgments that their contracts are enforceable and may not be terminated at will by the Department. And they seek that relief from acts of the Department which, in their view, impaired the obligation of their contracts in violation of the United States and Georgia Constitutions. Thus, in the language of Paragraph V, "[s]overeign immunity is … waived for" this "action[] in the superior court seeking declaratory relief from acts of … a[] … department … of this state … in violation of … the Constitution of this state [and] the Constitution of the United States." Id.

But, unlike the trial court, we conclude that the rights-of-way

2

contracts at issue here are terminable at will. More than a century ago, this Court held that if a contract calls for continuous performance but does not set a definite duration for the contract, and "no time is fixed by law or usage," the contract may be terminated at will by either party with notice. *Electric R. Co. v. Tenn. C., I. & R. Co.*, 98 Ga. 189, 192 (1896). The contracts here do not specify a definite duration by time (with either a fixed period or a fixed end date), and the event they specify for when the contracts will no longer be in effect — the parties entering a new agreement — effectively leaves the duration of the contracts (both when and whether it could end) subject to one party's complete discretion. The result is that these particular contracts are contracts of indefinite duration, terminable at will by either party.

For these reasons, which are set out in more detail below, the trial court's determination that sovereign immunity is waived for this declaratory judgment action is affirmed, but the court's judgment granting declaratory and injunctive relief is vacated, and the

3

case is remanded for further proceedings consistent with this decision.

1. *Background*

The telecommunications companies in this case provide broadband internet services across Georgia. To do so, these providers need to build, maintain, and operate wires, cables, and equipment along public rights of way. Their permission to do those things is granted under right-of-way permits and related contracts that each provider has entered into with the Georgia Department of Transportation. These contracts also establish annual permit fees, prescribe rules for how the providers' work would be completed, and define the Department's rights and responsibilities related to the providers' work. And each contract explains that it "shall govern over any other rules or policies that may conflict herewith and shall remain in full force and effect until [the Department] and [the provider] enter into a subsequent agreement regarding the [contract's] subject matter."

In 2021, the Department amended its own rule that regulates the installation, relocation, and management of utilities on public

4

rights of way. See Ga. Comp. R. & Regs. r. 672-11-.04 (adopted Feb. 24, 1986; amended Sept. 13, 2021; amended Nov. 11, 2021). The new rule provided for higher annual permit fees, but it also gave the option for the Department to continue existing contracts with providers or enter into new ones. Id.

After the revised rule went into effect, the Department notified the providers a number of times that it wanted them to enter into new right-of-way contracts by September of 2023. The providers refused to agree to the terms of the new contracts. The Department then sent another notice informing them that "effective November 1, 2023, any communication utility provider that has not executed or made arrangements to execute a new … agreement" would be required to "adhere to" the requirements of the new rules rather than the old contracts.

The day before the Department's November 1 deadline, the providers sued the State in superior court. In that action, the providers sought declaratory judgments that (1) the "duration clause" in their contracts is a "valid and enforceable contractual provision";

5

(2) their contracts are "perpetual[,] vesting [the providers] with a right that cannot be unilaterally terminated by [the Department]"; and (3) their contracts "are a perpetual easement." As the litigation proceeded, the providers contended (among other things) that the contracts are enforceable and are not terminable at the will of either party, because the duration clause of their contracts specifies a sufficiently definite duration and that the Department's actions have impaired the obligation of their contracts in violation of the United States and Georgia Constitutions. See US Const. art. I, § 10, cl. 1; Ga. Const. of 1983 Art. I, Sec. I, Par. X.

The State moved to dismiss the lawsuit, and the providers moved for summary judgment. The trial court denied the motion to dismiss and granted summary judgment. As to sovereign immunity, the trial court ruled that sovereign immunity was waived under Article I, Section II, Paragraph V(b) of the Georgia Constitution because the providers had sought declaratory relief and alleged that the Department's steps to implement the new contracts violated the law. On the merits, the trial court concluded that the right-of-way

6

contracts were enforceable and could not be terminated at will by the Department based on the contracts' duration clauses.

The State appealed to the Court of Appeals, which transferred the appeal to this Court because of this Court's jurisdiction over questions of constitutional construction. Ga. Const. of 1983 Art. VI, Sec. VI, Par. II(1).

2. *Sovereign Immunity*

We review de novo the trial court's determination that sovereign immunity is waived for the providers' action.[1] See *McBrayer v. Scarbrough*, 317 Ga. 387, 388 (2023).

Under Article I, Section II, Paragraph V of the Constitution of Georgia, sovereign immunity is waived for certain actions brought against the State and local governments. That provision declares that sovereign immunity is waived for "actions in the superior court

---

[1] We note that, as a general matter, sovereign immunity is separately "waived as to any action ex contractu for the breach of any written contract ... entered into by the state or its departments and agencies." Ga. Const. of 1983 Art. I, Sec. II, Par. IX(c). The providers have not contended that this separate waiver applies.

7

seeking declaratory relief from acts of" various state and local governmental entities and their officers and employees "outside the scope of lawful authority or in violation of the laws or the Constitution of this state or the Constitution of the United States." Ga. Const. of 1983 Art. I, Sec. II, Par. V(b)(1). Paragraph V then "further waive[s]" sovereign immunity so that the court may, "only after awarding declaratory relief, enjoin such acts to enforce its judgment." Id. Thus, whether sovereign immunity is waived for a given action under this provision turns on whether the petitioners have sought "declaratory relief" from "acts" of the relevant governmental entity that are either "outside the scope of lawful authority or in violation of the laws or the Constitution of this state or the United States." Id. See also *Kuhlman v. State*, 317 Ga. 232, 235 (2023).

Applying that language here, we have little trouble concluding that the providers have brought an action to which Paragraph V's waiver of sovereign immunity applies. The providers seek declaratory relief in the form of declaratory judgments that the duration

8

clauses of their contracts are "valid and enforceable," that their contracts cannot be terminated unilaterally by the Department, and that the Department has acted in violation of the laws or Constitution of this state or the Constitution of the United States. Among other things, they contend that, by taking the position that the providers must comply with the requirements of a new administrative rule, even if those requirements conflict with the provisions of their current contracts with the Department, and by indicating that the Department would no longer abide by the terms of those current contracts, see *Coffee Butler Serv., Inc. v. Sacha*, 258 Ga, 192, 193 (1988), the Department has impaired the obligation of their contracts in violation of the United States and Georgia Constitutions.[2] In short, tracking the language of Paragraph V, the providers' action

[2] The State contends that the providers abandoned any argument that the Department's actions violated the United States and Georgia Constitutions. Not so. The trial court's order granting summary judgment says that, in response to the court asking if the providers were abandoning those claims, the providers merely stated that "if the [rights-of-way] Contracts were enforceable under their terms and not terminable at will . . . then the Court would not need to reach and rule on" the other claims. That statement does not reflect withdrawal or abandonment of the providers' other arguments, only that resolving them would not be necessary if they prevailed on their claim about the enforceability of the contract.

9

"seeks declaratory relief from acts of … a[] department … of this state … in violation of … the Constitution of this state [and] the Constitution of the United States." Ga. Const. of 1983 Art. I, Sec. II, Par. V(b)(1). The State contends that sovereign immunity is not waived under Paragraph V because the providers have not sought a specific declaration that the Department exceeded its lawful authority or violated the law. But the State misreads Paragraph V. Under it, sovereign immunity is waived for actions seeking "declaratory *relief from* acts of the state … outside the scope of lawful authority or in violation of" state law or the Georgia or United States Constitution. Ga. Const. of 1983 Art. I, Sec. II, Par. V(b)(1) (emphasis added). It does not require a *declaration that* acts of the state are outside the scope of lawful authority or in violation of state law or the Georgia or United States Constitution. In other words, although it must be apparent from the pleadings that a petitioner seeks relief from the kind of unlawful acts that Paragraph V describes, see *Kuhlman*, 317 Ga. at 235, this provision's waiver is not contingent on a petitioner

10

seeking a specific determination that those alleged acts are unlawful.[3]

3. *Merits*

The trial court determined that the contracts in this case were "enforceable and not terminable at will" by the Department, relying on their language stating that they "shall remain in force and effect until [the Department] and [the providers] enter into a subsequent agreement regarding the subject matter hereof." We review de novo the trial court's construction of the contracts. *Unified Gov't of Athens-Clarke County v. Stiles Apts.*, 295 Ga. 829, 832 (2014).

Under longstanding Georgia law, if a contract calls for continuous performance but does not set a definite duration and "no time is fixed by law or usage," the contract may be terminated at will by either party with notice. *Electric R. Co. v. Tenn. C., I. & R. Co.*, 98

---

[3] Of course, whether sovereign immunity is waived under Paragraph V for an action seeking declaratory relief is a separate question from whether the petitioner's claims in such an action meet the threshold conditions for maintaining a claim under the Declaratory Judgment Act. See OCGA § 9-4-2; *Cobb County v. Floam*, 319 Ga. 89, 96 (2024). That separate question is not before us here.

11

Ga. 189, 192 (1896). See also, e.g., *Lederle v. Atlanta*, 164 Ga. 440, 441 (1927); *Blackstock v. Atlanta Newspapers, Inc.*, 94 Ga. App. 313, 314 (1956); *Ely v. Stratoflex, Inc.*, 132 Ga. App. 569, 571 (1974); *Atlanta Dairies Co-Op v. Grindle*, 182 Ga. App. 409, 410 (1987); *Voyles v. Sasser*, 221 Ga. App. 305, 305 (1996); *Jones v. Destiny Indus.*, 226 Ga. App. 6, 8 (1997); *Pickle Logging, Inc. v. Ga. Pac. Corp.*, 276 Ga. App. 398, 400 (2005); *Poole v. In Home Health, LLC*, 321 Ga. App. 674, 675 (2013). See also John K. Larkins, Jr., Georgia Contracts: Law and Litigation § 10:8 (2d ed. 2011) (2024 update) ("A contract of indefinite duration (whether an employment contract or otherwise) is terminable at will by either party.").[4]

Given infinite possible variations of contracts and contractual terms, we do not try here to identify the precise line that separates

---

[4] The rule is different for contracts that call for a single performance. When an otherwise enforceable contract is for, say, rendering a discrete service, or delivering goods once, a "reasonable time for performance will be implied" in the absence of a term setting such a time. *Read v. GHDC, Inc.*, 254 Ga. 706, 706 (1985) (citing *Whitley v. Patrick*, 226 Ga. 87 (1970); *Brown v. McInvale*, 118 Ga. App. 375, 375 (1968); Restatement (Second) of Contracts, § 204 (1979)).

contracts with a definite duration from those with an indefinite duration in all cases. But based on our precedent and persuasive authority from the Court of Appeals, we can say that a term of definite duration may be expressed either by time (a set period for performance, or an express end date), or by some other specified event that supplies an end date. See, e.g., *F & F Copiers, Inc. v. Kroger, Co.*, 194 Ga. App. 737, 738 (1990) (contract provided for a three-year term); *Heritage of Lanier, Inc. v. Akins*, 216 Ga. App. 280, 281–82 (1995) (employment contract of definite duration provided that employee would be paid $25,000 per year and that the contract would expire either after eight years or after the employee had been paid the full $200,000 under various contingencies of the contract). On the other hand, precedent establishes that a contract's duration may be indefinite if the contract offers no conceivable basis for identifying a potential end date. Such indefiniteness could arise because the contract offers no basis at all for determining the end date. See, e.g., *Moran v. NAV Serv.*, 189 Ga. App. 825, 826 (1989). Or a contract may be indefinite because there is no assurance at all that the event

13

that would trigger termination will ever happen — much less that it will happen at any particular time. See, e.g., *Barker v. CTC Sales Corp.*, 199 Ga. App. 742, 743 (1991) (contract providing for employee's employment until the "insolvency" of the employer was for an indefinite term). That is commonly true of contracts that leave the happening of such a termination event subject to the complete discretion of one party. See, e.g., *Ga. Power Co. v. Busbin*, 242 Ga. 612, 613 (1978) (contract providing for employee's employment "until his retirement date" was of an indefinite duration). Thus, for example, an exclusive dealership contract for "as long as [the dealer] stayed committed to [a certain mobile home brand]" was for an "indefinite duration" and therefore terminable at will. *Jones*, 226 Ga. App. at 8. An agreement to pay for the supply of certain food products that ended when the provider decided to no longer provide those products was terminable at will. *CAG Food Servs. v. Shaver Foods, LLC*, 2019 WL 12762541 at *3 (NDGA 2019) (applying Georgia law). And an agreement for "permanent" employment was terminable at will because such agreements "continue indefinitely," *Bentley v.*

14

*Smith*, 3 Ga. App 242, 247 (1907). See also *Ely*, 132 Ga. App. at 571 (same); *Atlanta Dairies Co-Op*, 182 Ga. App. at 410 (same); *Pickle Logging, Inc.*, 26 Ga. App. at 400 (same).[5]

That brings us to the contracts here. Those contracts set annual fees for the providers' rights-of-way permits, and with respect to duration, they say only that they "shall remain in full force and

---

[5] As we said, the above description of definite and indefinite contracts does not cover the field with respect to determining whether a contract that calls for continuous performance is terminable at will. Although conditioning the termination of a contract on an event that may never happen generally will be a sufficient basis for deeming the contract indefinite, we do not address possible exceptions or caveats to the general rule here. For example, federal courts applying Georgia law have suggested that contracts of otherwise indefinite duration may not be terminable at will if they expressly list performance or default conditions, on the theory that including such conditions expresses a clear intention that the contract would not be terminable merely at will, without any cause whatsoever. See *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F3d 1274, 1280 (11th Cir. 2003) (citing *Coffee v. General Motors Acceptance*, 5 FSupp2d 1365 (SDGa 1998)). Moreover, parties are free to contract around default rules unless the law provides otherwise, although they generally must do so expressly. See *King v. King*, 354 Ga. App. 19, 27 (2020) (explaining that "parties are free to contact [sic] around [a] default rule, unless prohibited by statute or public policy," and that the parties did that when they "chose to include an express provision" contracting around the default rule); *Mitsui Marine & Fire Ins. Co., Ltd. v. Hanjin Shipping Co., Ltd.*, 279 Ga. App. 689, 694 n. 16 (2006) (explaining that despite the "bright line default rule," future parties could negotiate around this rule by "explicitly stating" that the parties were not bound by it). But the parties have not contended that these concepts apply to the contracts at issue here.

effect until [the Department] and the [provider] enter into a subsequent agreement regarding the subject matter hereof." This language does not specify a definite term by time (either a fixed period or a fixed end date). And the event specified for when the contract will no longer be in "full force and effect" — the parties entering a "subsequent agreement regarding the [contract's] subject matter" — effectively leaves the duration of the contracts (both when and whether the contract might end) subject to the complete discretion of one party. The contracts thus offer no basis at all for determining whether and when the contract might end. Such a contract is indefinite under Georgia law. See *Jones*, 226 Ga. App. at 8; *Pickle Logging, Inc.*, 26 Ga. App. at 400; *Harris County v. Penton,* 211 Ga. App. 498, 499–500 (1993); *CAG Food Servs.*, 2019 WL 12762541 at *3.

The providers resist this conclusion, but the decisions they marshal in support are not helpful to them. Those decisions, including *State of Georgia v. Federal Defender Program, Inc.*, 315 Ga. 319, 343–44 (2022), *Mori Lee, LLC v. Just Scott Designs, Inc.*, 325 Ga. App. 625, 630 (2014), and *Alexis, Inc. v. Werbell*, 209 Ga. 665, 670–

16

71 (1953), did not address claims that the contracts at issue were terminable at will for lack of a definite duration, but rather claims that the contracts were unenforceable because they were too vague. That difference matters. A contract is not void or unenforceable for lack of a duration term (or any other term, for that matter) unless the "indefiniteness in subject matter" is "so extreme as not to present anything upon which the contract may operate in a definite manner." *Federal Defender Program, Inc.*, 315 Ga. at 344 (quotation marks omitted). Indeed, a contract that is silent as to its duration is not likely to be deemed unenforceable on that basis because the law generally supplies default rules for duration when the contract fails to specify one. See *Read v. GHDC, Inc.*, 254 Ga. 706, 706 (1985) (when a real estate sales contract was missing a term for "time for performance," a "reasonable time for performance" was "implied"); *Electric R. Co.*, 98 Ga. at 192 ("The rule is stated as follows: 'If a continuous contract fixes no time during which it is to last, and no time is fixed by law or usage, it may be terminated at the will of

17

either party by notice.'"). In other words, even if a contract is indefinite in duration, it may still be enforceable as long as it "contains matter which will enable the courts, under proper rules of construction, to ascertain the terms and conditions on which the parties intended to bind themselves." *Federal Defender Program, Inc.*, 315 Ga. at 344 (citation omitted). See also, e.g., *Electric R. Co.*, 98 Ga. 189, 191–92 (explaining that although a contract to buy and sell a given quantity of coal daily for an unspecified period was of indefinite duration and thus terminable at will, it was still "legally established" because its terms other than duration were "fully agreed upon," so the plaintiff could not abandon the agreement without notice to the defendant). So, decisions holding that a contract is not enforceable based on its duration term (or lack thereof) do not bear on how to assess the different question whether a contract, although enforceable, is terminable at will because its duration is indefinite.[6]

---

[6] The providers also rely on *GAPIII, Inc. v. Seal Indus., Inc.*, 338 Ga. App. 101 (2016), in which the Court of Appeals held that a company could not unilaterally terminate a contract of indefinite duration. This decision of the Court

In sum, although the trial court was correct that the duration clauses of the right-of-way contracts here did not render those contracts unenforceable, those contracts were for an indefinite duration and thus terminable at will with notice, and the trial court erred in concluding otherwise.

4. *Relief*

For the reasons set out above, the trial court's determination that sovereign immunity is waived for the providers' action seeking declaratory relief is affirmed. And because the trial court erred in concluding that the rights-of-way contracts were not terminable at will, its judgment granting declaratory and injunctive relief is vacated.[7] Finally, because it is not clear from the parties' briefing

---

of Appeals applying New York contract law is not binding authority with respect to a question of Georgia law in this Court. Indeed, this decision is not even binding on the Court of Appeals, given that it did not garner a majority of the judges on the panel. And as best we can tell, New York law may well be different from Georgia law with respect to the principles of contract law at issue here. Id. at 113–14. So *GAPIII* is not useful authority in this case, and we decline to consider it further.

[7] We do not reach the State's arguments that the trial court's injunction was also granted in error either because it was not entered "after" the court's order granting declaratory relief, or because the injunction was not needed to "enforce its judgment," Ga. Const. of 1983, Art. I, Sec. II, Par. V(b)(1).

whether or how the conclusion that these contracts are terminable at will affects any of their alternative arguments, we leave any such arguments to be raised and addressed as needed on remand.

*Judgment affirmed in part and vacated in part, and case remanded. All the Justices concur.*